**Parris HAMILTON, Defendant Below–Appellant**

v.

**STATE Of Delaware, Plaintiff Below–Appellee.**

No. 548, 2012.

Supreme Court of Delaware.

Submitted: Oct. 9, 2013.

Decided: Dec. 9, 2013.

---

21. *Id.* at 7.1–7.4.

22. Panel's Report at 12.

Christopher S. Koyste, Esquire, of Wilmington, Delaware for Appellant.

Maria T. Knoll, Esquire, and Andrew J. Vella, Esquire (argued), of the Department of Justice, Wilmington, Delaware for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

RIDGELY, Justice:

Defendant-below/Appellant Parris Hamilton appeals from a Superior Court jury conviction of two counts of Murder First Degree, two counts of Attempted Murder First Degree, two counts of Kidnapping First Degree, one count of Burglary First Degree, and seven counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"). Substantively, Hamilton raises two claims on appeal. Hamilton first contends that the trial court erred when it allowed a nonlegal expert witness to make a misstatement of the law and failed to give a timely and adequate curative instruction. Hamilton also contends that the State failed to prove every element of the burglary charge. We find no merit to Hamilton's claims and affirm.

### Facts and Procedural History

For one month in 2009, Hamilton lived with Crystal Moody ("Crystal") and her sons Christopher and Tyrone in Wilmington. Crystal leased the property solely in her name. But the cable, internet, and telephone bill was in Hamilton's name. During that time, Crystal and Hamilton's relationship was rocky, due in part to Hamilton's failure to contribute to the household expenses. At the end of the month, Crystal insisted that Hamilton move out. He did so willingly, leaving behind several personal items including a Sony Playstation.

Hamilton tried to reconcile his relationship with Crystal, but she continually refused Hamilton's efforts. On the day of the shootings, Hamilton made several phone calls to Crystal's house, asking to come over. Crystal refused his request because he was drunk. Several hours later, Hamilton came over nonetheless, and one of Crystal's sons let him in the house. Crystal and Tyrone asked Hamilton to leave multiple times, but Hamilton insisted that he wanted to get his Playstation first. Christopher went upstairs to get the Playstation. When Christopher came back downstairs, he saw Hamilton push Crystal down onto the steps. Hamilton then shot Tyrone, Christopher, and Crystal multiple times each. Crystal and Christopher survived the shooting, but Tyrone died from his injuries.

Hamilton was arrested and charged in the Superior Court with two counts of first degree murder, two counts of attempted murder first degree, two counts of first degree kidnapping, one count of first degree burglary, and seven counts of PFDCF. At trial, Hamilton presented a defense of Extreme Emotional Distress (EED), due to ongoing personal matters and the recent death of his grandmother. The State presented testimony from Dr. David E. Raskin, who testified that because Hamilton was voluntarily intoxicated on the night of the crimes, he was preclud-

ed from raising the defense of EED. Promising that he would give the jury an instruction on the law later, the trial judge explained that Dr. Raskin was only testifying to his understanding of the defense from his position as a psychiatrist. On cross examination, Hamilton elicited additional testimony from Dr. Raskin that an EED defense is precluded by voluntary intoxication. The trial court later instructed the jury that a defendant is not necessarily precluded from asserting an EED defense by virtue of being voluntarily intoxicated. The jury convicted Hamilton on all charges. Hamilton then filed a Motion for Judgment of Acquittal, which was denied. The trial court sentenced Hamilton to four life sentences plus fifty-five years at Level V supervision, suspended after fifty-one years. This appeal followed.

### Discussion

■■■ When a trial court admits into evidence misstatements of law by a non-legal expert it is making an evidentiary ruling. We review evidentiary rulings restricting or allowing expert testimony for abuse of discretion.[1] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice to produce injustice."[2] We review a denial of a Motion for Judgment of Acquittal *de novo* to determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt."[3]

### Adequate Curative Instructions Were Given

■■■ A trial court has the sole discretion whether and when to give a curative instruction to the jury because it "is in a better position to determine whether a curative instruction should be given."[4] "As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[5] Further, a trial court's "prompt curative instructions presumptively cure error ... [and] 'adequately direct the jury to disregard improper matters' from consideration."[6] "Juries are presumed to follow the trial judge's instructions."[7]

■■■ On appeal, Hamilton contends that the trial court erred when it allowed Dr. Raskin's misstatement of the law without a proper curative instruction. On direct examination, Dr. Raskin testified that "voluntary intoxication does not permit this [EED] defense. If someone is drinking heavily, of course it's going to affect their state of mind and their control systems and their judgment and all that sort of stuff, so if that's on board, it's not possible."[8] He also stated:

1. *Sammons v. Doctors for Emergency Servs., P.A.*, 913 A.2d 519, 528 (Del.2006) (citing *Bush v. HMO of Del.*, 702 A.2d 921, 923 (Del.1997)).

2. *Collins v. State*, 56 A.3d 1012, 1018 (Del. 2012) (quoting *Culp v. State*, 766 A.2d 486, 489 (Del.2001)).

3. *Priest v. State*, 879 A.2d 575, 580 (Del.2005) (quoting *Couch v. State*, 823 A.2d 491, 2003 WL 21054789, at *1 (Del.2003)).

4. *Sammons*, 913 A.2d at 539.

5. *Flamer v. State*, 490 A.2d 104, 128 (Del. 1984) (citing *Miller v. State*, 224 A.2d 592, 596 (Del.1966)).

6. *Jones v. State*, 62 A.3d 1223, 2013 WL 596379, at *2 (Del.2013) (quoting *McNair v. State*, 990 A.2d 398, 403 (Del.2010)).

7. *McNair*, 990 A.2d at 403 (quoting *Purnell v. State*, 979 A.2d 1102, 1109 (Del.2009)).

8. Appellant's Opening Br. Appendix at A82.

[V]oluntary intoxication is not something that sort of happened to him, he allowed that to happen and permitted it to happen and participated in it.

And in my understanding of this area, extreme emotional distress, that's not something that can happen to be able to be successful with that [EED] defense.[9]

In response to Hamilton's objection, the trial court instructed to the jury, stating: "I will explain, ladies and gentlemen, what the law is on extreme emotional distress in my instructions which I'll be giving you probably tomorrow. The Doctor is explaining it from the point of view of his understanding of it as a psychiatrist."[10]

■ Later during cross-examination, the doctor testified that "[m]y understanding is that if voluntary intoxication is on board.... you have negated the opportunity for an extreme emotional distress defense."[11] Responding to Hamilton's questions, the Doctor further explained: "[T]his is, of course, the Court system, I'm uncomfortable even saying this because I'm not knowledgeable enough to say it, but I'll say it, In my opinion you have negated the ability to use that defense if there is evidence that alcohol of any significance is on board."[12] Hamilton did not raise an objection to the statements on cross-examination. Before jury deliberations, the trial court provided one final instruction, explaining that the fact that a person has consumed alcohol does not nec-essarily preclude a finding of extreme emotional distress.[13]

The State concedes that Dr. Raskin made a misstatement of law during his direct and cross examination but argues that the trial court's curative instructions eliminated any potential error. We agree. Following Dr. Raskin's misstatements of law, the trial court immediately told the jury that the witness's statements were his opinion and the court would instruct them on the law. Later in the trial, the court issued more complete jury instructions, accurately describing the law. Moreover, Dr. Raskin qualified his statements during his testimony as opinion and explained that he felt uncomfortable testifying about legal matters. Given our presumption that juries follow instructions, we are satisfied that these instructions sufficiently cured whatever prejudice Hamilton may have experienced.

### The State Proved All Elements of the Burglary Charge

■ Hamilton next argues that State failed to prove all of the elements of his burglary charge because he had a privilege to remain in Crystal's house on the day of the shootings. In relevant part, Delaware law provides that "a person is guilty of burglary in the first degree when the person knowingly *enters or remains unlawfully* in a dwelling at night with intent to commit a crime therein" and is armed or causes physical injury to a person.[14] "A

9. *Id.* at A84.

10. *Id.* at A82–83.

11. *Id.* at A90.

12. *Id.*

13. *See id.* at A72. This instruction is the exact instruction requested by Hamilton except that the trial court added the word "necessarily" to the final instruction. Despite Hamilton's arguments on appeal that this addition was an error, we find that the trial court's instruction was a correct statement of the law. *See State v. Magner*, 732 A.2d 234, 242 (Del.Super.Ct.1997) (holding that "to the extent [a] Defendant's mental state is attributable to alcohol or drug use, it is not relevant to the trier's of fact determination of whether Defendant acted under the influence of extreme emotional distress").

14. 11 *Del. C.* § 826(a) (emphasis added).

person 'enters or remains unlawfully' in or upon premises when the person is not licensed or privileged to do so." [15]

Although the record shows that Hamilton previously resided in the house where the crimes occurred, he did not have a license or privilege to be in the house at the time of the shooting. Crystal asked Hamilton to move out of the house and refused his many attempts at reconciliation. As is clear from Hamilton's actions, he did not have a license or privilege to remain in the house on the day of the shootings. Hamilton called the house earlier in the day, asking to come over. Further, the lawful occupants of the house repeatedly demanded that Hamilton leave.

15. *Id.* § 829(d).

Even though the cable, telephone, and internet bill was in his name, this alone is not sufficient to establish a property right to remain in the house under 11 *Del. C.* § 829(d). We are therefore convinced that the State has met its burden in proving every element of the crime of Burglary.

### *Conclusion*

The judgment of the Superior Court is **AFFIRMED.**