# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,  )
 )
 v.  )  I.D. # 0910017490
 )
PARRIS HAMILTON,  )
 )
 Defendant.  )

## CORRECTED MEMORANDUM OPINION

***Upon Defendant's Motion for Postconviction Relief – DENIED***
Submitted: February 16, 2016
Decided: March 1, 2016

***Upon Motion to Withdraw as Counsel for Parris Hamilton – GRANTED***
Submitted: February 16, 2016
Decided: March 1, 2016

Patrick J. Collins, Esquire, Collins & Associates, Wilmington, DE, Attorney for Defendant.

Maria T. Knoll, Esquire, Deputy Attorney General, Department of Justice, Wilmington, DE, Attorney for the State of Delaware.

**ROCANELLI, J.**

## I. PROCEDURAL HISTORY

Police arrested Defendant Parris Hamilton on October 24, 2009. The Grand Jury indicted Hamilton on January 19, 2010, charging him with two counts of Murder First Degree (including felony murder), two counts of Attempted Murder First Degree, two counts of Kidnapping First Degree, Burglary First Degree, and seven counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"). These charges stem from injuries and death caused by the shooting of Hamilton's ex-girlfriend, Crystal Moody, and her two sons, Tyrone Moody and Christopher Moody.

Christopher Koyste, Esquire, entered his appearance. Greg Johnson, Esquire, was also appointed to the case several months later. (Together, Mr. Koyste and Mr. Johnson are "Trial Counsel"). A jury trial began on May 22, 2012 and lasted for eleven days. On June 8, 2012, the jury returned guilty verdicts on all charges. On September 7, 2012, this Court sentenced Hamilton to four life sentences plus fifty-five years at Level V, suspended after fifty-one years.

Mr. Koyste represented Hamilton on appeal. (With respect to the appeal, Mr. Koyste is "Appellate Counsel"). The Notice of Appeal was filed on October 7, 2012. In his Opening Brief, Appellate Counsel argued that the testimony of the State's expert, Dr. Raskin, included an inaccurate statement of the law. Specifically, Appellate Counsel argued that Dr. Raskin inaccurately opined that

voluntary intoxication precludes an extreme emotional distress ("EED") defense and that the Court failed to correct the error with a curative instruction. Appellate Counsel's second claim argued that insufficient evidence existed to sustain Hamilton's conviction of Burglary First Degree because Hamilton had a privilege to be in Crystal's home.

The Delaware Supreme Court affirmed Hamilton's convictions and sentence.[1] In its Opinion, the Supreme Court agreed that Dr. Raskin misstated the law by opining that voluntary intoxication precluded the defense of EED.[2] The Court found any prejudice was cured, however, by actions taken by the trial court – specifically, provision of a curative instruction and an accurate EED jury instruction.[3] The Court also held that Hamilton had no privilege to be in Crystal's home and that sufficient evidence existed to sustain his burglary conviction.[4]

On October 3, 2014, Hamilton filed a timely Motion for Postconviction Relief as a self-represented litigant. The Court issued an order for appointment of counsel on October 20, 2014 and Patrick J. Collins, Esquire was appointed ("Rule 61 Counsel").

---

[1] *See Hamilton v. State*, 82 A.3d 723, 728 (Del. 2013).
[2] *Id.* at 727.
[3] *Id.*
[4] *Id.* at 728.

## II. FACTS PRESENTED AT TRIAL SUPPORTING CONVICTION

For one month in 2009, Hamilton lived with Crystal Moody ("Crystal") and her sons, Christopher and Tyrone, in Wilmington, Delaware. Crystal leased the property solely in her name; however, the cable, internet, and telephone bill were in Hamilton's name. During that time, Crystal and Hamilton's relationship was rocky partly because of Hamilton's failure to contribute to the household expenses. At the end of the month, Crystal insisted that Hamilton move out. Hamilton willingly moved out, leaving behind several personal items including a Playstation.

Hamilton tried to reconcile his relationship with Crystal, but she refused Hamilton's efforts. On the day of the shootings, Hamilton made several phone calls to Crystal's house, asking to come over. Crystal refused his request because he was drunk. Nonetheless, Hamilton came to Crystal's house several hours later and one of Crystal's sons let Hamilton in the house. Crystal and Tyrone asked Hamilton to leave multiple times, but Hamilton insisted that he wanted to get his Playstation first. Christopher went upstairs to get Hamilton's Playstation. When Christopher came back downstairs, he saw Hamilton push Crystal down onto the steps. Hamilton then shot Tyrone, Christopher, and Crystal multiple times each. Crystal and Christopher survived the shooting; however, Tyrone died from his injuries.

## III. CONSIDERATION OF PROCEDURAL BARS

Superior Court Criminal Rule 61 governs Hamilton's motion for postconviction relief. Postconviction relief is a "collateral remedy which provides an avenue for upsetting judgments that have otherwise become final."[5] To protect the finality of criminal convictions, the Court must consider the procedural requirements for relief set out under Rule 61(i) before addressing the merits of the motion.[6]

Rule 61(i)(1) bars a motion for postconviction relief if it is filed more than one year from the final judgment;[7] this bar is not applicable as Hamilton's first postconviction motion was timely. Rule 61(i)(2) bars successive postconviction motions;[8] this bar is not applicable as Hamilton has not filed successive postconviction motions. Rule 61(i)(3) bars relief if the motion includes claims not asserted in prior proceedings leading to the final judgment unless the movant shows cause for relief from the procedural default and prejudice from violation of the movant's rights.[9] This bar will be addressed in the discussion of the claims to which it applies; however, Hamilton has not presented a colorable claim of a constitutional violation to warrant application of the exception in Rule 61(i)(3). The fundamental legality, reliability, integrity and fairness of the proceedings

---

[5] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).
[6] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[7] Super. Ct. Crim. R. 61(i)(1).
[8] Super. Ct. Crim. R. 61(i)(2).
[9] Super. Ct. Crim. R. 61(i)(3).

leading to Hamilton's conviction and sentencing are sound. Moreover, Rule 61(i)(4) bars relief if the motion includes grounds for relief formerly adjudicated in any proceeding leading to the judgment of conviction, in an appeal, or in a postconviction proceeding;[10] this bar will be addressed in the discussion of the claims to which it applies.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A. Standard for Ineffective Assistance of Counsel

The standard used to evaluate claims of ineffective counsel is the two-prong test articulated by the United States Supreme Court in *Strickland v. Washington*,[11] as adopted in Delaware.[12] The movant must show that (1) trial counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different.[13] Failure to prove either prong will render the claim insufficient.[14] Moreover, the Court shall dismiss entirely conclusory allegations of ineffective counsel.[15] The movant must provide concrete

---

[10] Super. Ct. Crim. R. 61(i)(4).
[11] 466 U.S. 668 (1984).
[12] *See Albury v. State*, 551 A.2d 53 (Del. 1988).
[13] *Strickland*, 466 U.S. at 687.
[14] *Id.* at 688; *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).
[15] *Younger*, 580 A.2d at 555; *Jordan v. State*, 1994 WL 466142, at *1 (Del. Aug. 25, 1994).

allegations of prejudice, including specifying the nature of the prejudice and the adverse effects actually suffered.[16]

With respect to the first prong—the performance prong—the movant must overcome the strong presumption that counsel's conduct was professionally reasonable.[17] To satisfy the performance prong, Hamilton must assert specific allegations to establish that Trial Counsel acted unreasonably as viewed against "prevailing professional norms."[18] With respect to the second prong—the prejudice prong—cumulative error can satisfy the prejudice prong when it undermines confidence in the verdict.[19]

**B.  Hamilton cannot establish prejudice regarding the State's presentation of voluntary intoxication.**

At trial, Hamilton presented a defense of EED, due to ongoing personal matters and the recent death of his grandmother. The issue of voluntary intoxication was an important issue. Both the State and Hamilton presented expert testimony to support their respective positions on the EED defense and whether it applied to Hamilton, and both experts submitted reports that included references to

---

[16] *Strickland*, 466 U.S. at 692; *Dawson*, 673 A.2d at 1196.
[17] *Strickland*, 466 U.S. at 687–88.
[18] *Id.* at 688; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) ("Mere allegations of ineffectiveness will not suffice.").
[19] *See Starling v. State*, 2015 WL 8758197, at *14-15 (Del. Dec. 14, 2015).

voluntary intoxication.[20] Although both expert witnesses were questioned at great length about voluntary intoxication and whether voluntary intoxication precluded a defense of EED, the trial judge later instructed the jury that a defendant is not necessarily precluded from asserting an EED defense by virtue of being voluntarily intoxicated.[21]

This issue was addressed by the Delaware Supreme Court on appeal. Specifically, Hamilton challenged Dr. Raskin's statement as presenting a legally incorrect standard to the jury. The Supreme Court held that Delaware law does not preclude a finding of EED simply because a defendant was also voluntarily intoxicated.[22] The Supreme Court characterized Dr. Raskin's conclusion to that effect as a "misstatement of the law."[23]

Even assuming that Trial Counsel's failure to challenge the State's presentation was deficient performance that satisfied *Strickland's* performance prong, Hamilton cannot establish prejudice. As the Supreme Court ruled, the trial judge's curative and final jury instructions ensured Mr. Hamilton's right to a fair trial.[24] Moreover, because a claim regarding the effect of Dr. Raskin's legally

---

[20] Before any experts testified, the trial judge granted Hamilton's motion to exclude evidence of Hamilton's blood alcohol level at the time of the offenses on the grounds that the State could not establish the necessary chain of custody.

[21] *Hamilton*, 82 A.3d at 727.

[22] *See id.* at 726-27.

[23] *Id.* at 726.

[24] *Id.* at 726-27.

inaccurate opinion has been previously adjudicated, it is procedurally barred by Rule 61(i)(4).[25]

## VII. DEFENDANT'S OTHER CLAIMS ALSO FAIL BECAUSE THEY ARE PROCEDURALLY BARRED AND ARE WITHOUT MERIT.

### A. Impartial Jury

Hamilton argues that he was denied an impartial jury because his initial jury panel was told via letter that his case was a capital case and, therefore, the jury was tainted. Hamilton did not raise this claim on appeal and, therefore, it is procedurally barred under Rule 61(i)(3) unless Hamilton shows cause for relief from default and prejudice from violation of Hamilton's rights.[26] Hamilton has not presented any argument to warrant consideration on the merits of this claim under the exception in Rule 61(i)(3). Nevertheless, Hamilton's claim is without merit. Although the initial panel for Hamilton's trial was sent a letter on May 15, 2012, stating that the case was a capital case, that panel was not used for trial. Instead, at Trial Counsel's request, Hamilton's trial was delayed and a new jury panel was selected on May 17, 2012.

### B. Interview by State Expert without Trial Counsel Present

Hamilton contends that the trial court abused its discretion when it permitted the State's psychiatric expert, Dr. Raskin, to interview Hamilton outside the

---

[25] *See* Super. Ct. Crim. R. 61(i)(4).
[26] *See* Super. Ct. Crim. R. 61(i)(3).

presence of Trial Counsel. At an office conference on May 15, 2012, the trial judge, the State, and Trial Counsel discussed that Dr. Raskin intended to meet with Hamilton one more time on the eve of trial. The State explained that Dr. Raskin was meeting with Hamilton right before trial because the defense had provided its expert report only a mere two months before trial, leaving the State with minimal time to prepare its own expert. Trial Counsel requested permission to be present for the meeting; however, when the trial judge asked for authority supporting Trial Counsel's request, Trial Counsel had none. The trial judge also expressed that mental health interviews are best conducted without outside influences, including counsel. Therefore, the trial judge did not abuse its discretion in denying the request.

## C. Double Jeopardy

Hamilton argues that his constitutional rights against double jeopardy were violated when he was convicted of multiple counts of PFDCF. This claim is procedurally barred under Rule 61(i)(3) because Hamilton did not assert it in the previous proceedings and Hamilton has not demonstrated cause for relief or prejudice to warrant consideration.[27]

---

[27] *See* Super. Ct. Crim. R. 61(i)(3).

Nevertheless, Hamilton misinterprets the protections afforded by the Double Jeopardy Clause,[28] which protects against multiple punishments for the same offense.[29] Section 1447(a) of Title 11 provides that a person "who is in possession of a firearm during the commission of a felony is guilty of possession of a firearm during the commission of a felony." The Delaware Supreme Court has consistently held that for each felony a defendant commits while in possession of a deadly weapon, separate convictions for possession of a deadly weapon are consistent with the deterrence goals of Section 1447(a) and that such convictions are supported by the statute's plain language.[30]

Hamilton committed multiple crimes for which he was convicted, including: the intentional and felonious murder of Tyrone with a firearm, Burglary First Degree of Crystal's house with a firearm, Attempted Murder First Degree of Crystal with a firearm, Attempted Murder First Degree of Christopher with a firearm, Kidnapping First Degree of Crystal with a firearm, and Kidnapping First Degree of Christopher with a firearm. Accordingly, Hamilton's claim that his

---

[28] *See* U.S. CONST. amend. V; DE CONST. art. 1, § 8.
[29] *See Seward v. State*, 723 A.2d 365, 375 (Del. 1999); *see also Nance v. State*, 903 A.2d 283, 286 (Del. 2006) (providing that The Double Jeopardy Clause protects against: (1) successive prosecutions; (2) multiple charges under separate statutes; and (3) being charged multiple times under the same statute).
[30] *See Fletcher v. State*, 2015 WL 790206, at *2 (Del. Feb. 24, 2015); *Nance v. State*, 903 A.2d 283, 288 (Del. 2006); *Robertson v. State*, 630 A.2d 1084, 1093 (Del. 1993); *Pauls v. State*, 554 A.2d 1125 (Del. 1989).

10

constitutional rights under the Double Jeopardy Clause were violated is procedurally barred and without merit.

### D. Misconduct at the Office of the Chief Medical Examiner

Hamilton contends that the State violated its *Brady* obligations by failing to disclose that there was misconduct at the Office of the Chief Medical Examiner ("OCME"). Hamilton argues that if he had information about the misconduct at the OCME, he could have argued at trial that Tyrone's death was caused by the misconduct within the OCME. Hamilton's claim is without merit. The investigation into the OCME has not yielded evidence of "the planting of false evidence to wrongly convict criminal defendants."[31] Further, Hamilton cannot argue that he would have presented an argument that Tyrone's death was a result of OCME misconduct where the record evidence demonstrated beyond a reasonable doubt that Hamilton intentionally murdered Tyrone with a firearm. Finally, the OCME controversy did not surface until 2014 – approximately two years after Hamilton's trial and conviction. Accordingly, there is no evidence that the State failed to disclose impeachment evidence.[32]

### E. Evidence of Burglary First Degree

---

[31] *Brown v. State*, 108 A.3d 1201, 1202 (Del. 2015).

[32] *See Cannon v. State*, 127 A.3d 1164, 1168-69 (Del. 2015) ("We have previously held that because the wrongdoing at the OCME was not known until 2014, incidents not falling within the relevant time period fail to qualify as *Brady* violations."); *Hickman v. State*, 116 A.3d 1243 (Del. 2015) (Table) ("The alleged misconduct by OCME employees was not revealed until 2014, and thus did not raise a concern that the State concealed material impeachment evidence, as required to find a *Brady* violation, at [defendant's] trial in 2001.").

Hamilton argues that there was insufficient evidence against him to be convicted of Burglary First Degree. On direct appeal, the Delaware Supreme Court ruled that the State proved all elements of Burglary First Degree beyond a reasonable doubt.[33] Specifically, the Supreme Court provided that under Delaware law, "a person is guilty of burglary in the first degree when the person knowingly *enters or remains unlawfully* in a dwelling at night with intent to commit a crime therein and is armed or causes physical injury to a person."[34] The Supreme Court noted that although Hamilton had previously resided in Crystal's house, he did not have a license or privilege to be in Crystal's house on the night of the shootings and the lawful occupants of the house repeatedly demanded that Hamilton leave.[35] Accordingly, this claim is without merit and is procedurally barred under Rule 61(i)(4) because it has been previously adjudicated.

## VIII. RULE 61 COUNSEL'S MOTION TO WITHDRAW AS COUNSEL

Rule 61 Counsel filed a Motion to Withdraw as Counsel pursuant to Superior Court Criminal Rule 61(e)(6) on the grounds that Defendant failed to assert meritorious grounds for postconviction relief. Withdrawal may be appropriate when "counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other

---

[33] *Hamilton*, 82 A.3d at 727-28.
[34] *Id.* at 727 (internal citations omitted).
[35] *Id.* at 728.

substantial ground for relief available to the movant . . . ."[36]  The Court must conduct a review of the record to determine whether Hamilton's motion contains any reasonable ground for relief.[37]

Rule 61 Counsel asserts that he has conducted careful and conscientious analysis of Hamilton's case materials in order to evaluate Hamilton's claims. Following his analysis, Rule 61 Counsel has determined that Hamilton's case presents no arguable issues to ethically advocate.  The Court has reviewed Hamilton's Motion and determined that Hamilton presents no meritorious grounds for relief.  Accordingly, withdrawal as counsel is appropriate.

## IX. CONCLUSION

Hamilton's claims are without merit and do not warrant relief.  The fundamental legality, reliability, integrity and fairness of the proceedings leading to Hamilton's convictions and sentencing are sound.

**NOW, THEREFORE, on this 1st day of March 2016, Defendant's Motion for Postconviction Relief is hereby DENIED and Rule 61 Counsel's Motion for Withdraw as counsel is hereby GRANTED.**

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*
_____
**The Honorable Andrea L. Rocanelli**

---

[36] Super. Ct. Crim. R. 61(e)(6).
[37] *State v. West*, 2013 WL 6606833, at *3 (Del. Super. Dec. 12, 2013).

13