# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          )

                Plaintiff,      )

v.                     )      Cr. ID. No. 1011012275

ANDRE MCDOUGAL,        )

                Defendant.   )

Submitted: January 24, 2018
Decided: March 16, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Andrew Vella, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Patrick J. Collins, Esquire and Matthew C. Buckworth, Esquire, Collins & Associates, Attorneys for Defendant Andre McDougal

PARKER, Commissioner

This 16th day of March, 2018, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court as follows:

## INTRODUCTION

On November 18, 2010, Defendant Andre McDougal was observed by police engaging in a hand-to-hand drug transaction. Over 2.5 grams of heroin and a handgun were found near McDougal and he was charged with various drug and weapon crimes.

At the time of the November 18, 2010 incident, McDougal was on probation for a manslaughter conviction. This incident led to a violation of that probation ("VOP"). The VOP hearing was held first. Following the VOP hearing, McDougal was found to have committed a VOP as a result of this incident and he was sentenced to 15 years of incarceration.

Having already secured a 15-year prison term on the VOP, the State offered McDougal a plea deal with a three-year prison sentence recommendation, which the State later lowered to a two-year sentence recommendation.

Yet despite McDougal's counsel's warning that McDougal could be sentenced as a habitual offender and facing life sentences if he was convicted at trial of any of the felony charges, and despite counsel's urging to accept the plea deal, McDougal continued to refuse to accept the plea offer and proceeded to trial.

The jury trial consisted of two witnesses, both police officers. They testified as to the drug transaction that was observed and the subsequent search of the area that led to the discovery of the heroin and firearm. Following the trial, McDougal was convicted of trafficking in heroin and possession with intention to deliver, and one weapon charge. McDougal was acquitted of the additional weapon charges.

1

The State, which was satisfied pre-trial with a 17-18 prison term for the incident at issue (15 years on the VOP and an additional 2-3 years in this case), following trial, moved to have McDougal declared a habitual offender on all three of the convictions and as a result he was sentenced to two life sentences on the drug convictions plus an additional 5 years on the weapon conviction.

McDougal is now serving a total of two life sentences plus 20 years (15 years on the VOP and 5 additional years on the underlying weapon conviction), rather than a 17-18 prison term he would be serving had he accepted the plea offer.

Before this Court in this Rule 61 motion are three claims of counsel ineffectiveness. The first claim is that counsel was ineffective during plea negotiations. The second claim is that counsel was ineffective for stipulating at trial that McDougal was a person prohibited. The third claim is that counsel was ineffective for not seeking merger of McDougal's life sentences at sentencing.

Despite the severity of the outcome of this case, the claims that McDougal raises in this motion are without merit. As to the first claim, McDougal was apprised of all relevant issues and potential sentences he was facing during plea negotiations and still chose to reject the plea. As to the second claim, under the facts and circumstances of this case, McDougal has not established that he suffered actual prejudice as a result of his counsel stipulating at trial that McDougal was a person prohibited. Finally, as to the third claim, counsel was not ineffective for not seeking merger of McDougal's life sentences at sentencing.

Consequently, this court is unable to provide relief, through this motion, for the outcome that resulted in this case.

2

## BACKGROUND AND PROCEDURAL HISTORY

Defendant Andre McDougal was arrested on November 18, 2010. At the time of his arrest, he was on probation stemming from a manslaughter conviction.[1] As a result of this incident, McDougal was charged with trafficking in heroin, possession with intent to deliver a narcotic schedule I controlled substance ("PWITD"), possession of a firearm during the commission of a felony ("PFDCF"), possession of a deadly weapon by a person prohibited ("PDWBPP"), and receiving a stolen firearm.

These charges along with a missed curfew formed the basis for a violation of probation ("VOP") in the manslaughter conviction. The VOP hearing on the manslaughter conviction was held on March 2, 2011, and following a contested VOP hearing, McDougal was found to have committed a VOP and was re-sentenced to 15 years of unsuspended Level V time, followed by probation.[2]

At the VOP hearing, the court noted on the record that McDougal would be eligible to be sentenced as a habitual offender, if convicted of the subject charges.[3] The VOP finding was affirmed by the Delaware Supreme Court on appeal.[4] Thereafter, Defendant filed a Rule 61 motion in the manslaughter case on the VOP ruling. The Rule 61 motion on the VOP was denied.[5] McDougal also filed a federal petition for a writ of habeas corpus as to the VOP sentence, which was also denied.[6]

---

[1] *State v. McDougal*, Criminal ID No. 0607023450.

[2] *McDougal v. State*, 2011 WL 4921345 (Del.).

[3] *State v. McDougal*, Criminal Action No. 0607023450, March 2, 2011 Contested Violation of Probation Hearing Transcript, at pg. 32.

[4] *McDougal v. State*, 2011 WL 4921345 (Del.),

[5] *State v. McDougal*, 2015 WL 3883058, Commissioner Report and Recommendation (Del.Super.), *adopted*, Superior Court Order dated October 2, 2015-Superior Court Criminal ID No. 0607023450 Docket No. 156, *appeal withdrawn*, Superior Court Criminal ID No. 0607023450 Docket No. 158.

[6] *McDougal v. Wesley, Warden, et al.*, 2014 WL 6693787 (D.Del. 2014).

After being sentenced to 15 years of unsuspended Level V time on the VOP for the manslaughter conviction stemming primarily from this incident at issue, a case review was held on these charges on June 13, 2011. At the time of the case review, McDougal was represented by Timothy J. Weiler, Esquire, from the Public Defender's office. Mr. Weiler was the same attorney who represented McDougal at his VOP hearing.

At the case review, the State offered McDougal a three year plea deal.[7] The State offered McDougal a plea to Trafficking Heroin, with a recommended sentence of ten years at Level V, suspended after three years.[8] McDougal rejected this plea offer.

By letter dated June 14, 2011, McDougal's counsel urged McDougal to reconsider his rejection of the plea offer.[9] In a follow-up letter that same date, counsel advised McDougal that he could be facing life sentences as a habitual offender if convicted of any of the felony charges and that he was facing mandatory life sentences if convicted of the trafficking and/or possession with intent to deliver charges. Counsel enclosed a copy of the habitual offender statute with his letter advising McDougal to accept the plea.[10]

After the case review, Mr. Weiler filed a request to discontinue the public defender's representation of McDougal due to a conflict of interest.[11] Thereafter, conflict counsel, Christopher D. Tease, Esquire, was appointed on or about June 28, 2011, to represent McDougal.[12]

---

[7] Superior Court Docket No. 11- Plea Offer dated June 13, 2011.
[8] *Id.*
[9] Superior Court Docket No. 85, Exhibit A.
[10] Superior Court Docket No. 85, Exhibit B.
[11] Superior Court Docket No. 12- Conflict Letter filed by Timothy Weiler, Esquire.
[12] Superior Court Docket No. 16- Order appointing Christopher D. Tease, Esquire as counsel.

A case review was scheduled on August 29, 2011. The prosecutor did not appear and McDougal was given a plea window until September 12, 2011.[13] At the case review, Mr. Tease stated: "Mr. Vella was not here today, could I have a plea window? He is looking at, if he gets convicted of a firearm, 25 years in jail."[14]

On the eve of trial, on September 12, 2011, McDougal was offered a second plea to ". . . something in the range of two years." McDougal rejected this plea offer.[15] McDougal's counsel later explained to the court that McDougal was under the mistaken impression that he needed to prevail on the subject charges in order to "get out from under" the VOP sentence. McDougal's counsel represented to the court that both he and the prosecutor spoke to McDougal about McDougal's mistaken impression and tried to persuade him to take the plea.[16]

This action was tried before a Superior Court jury on September 13-14, 2011. The trial consisted of two witnesses, both police officers, who testified about the hand-to-hand drug transaction and the subsequent search of the premises near McDougal. On September 14, 2011, McDougal was convicted of Trafficking in Heroin, Possession with Intent to Deliver Heroin and PFBPP. McDougal was found not guilty of PFDCF and Receiving a Stolen Firearm.

Prior to sentencing, the State moved to declare McDougal a habitual offender.[17] The State sought to declare McDougal a habitual offender under 11 *Del.C.* § 4214(b) on both of the drug convictions, and under 11 *Del.C.* § 4214(a) on the weapon conviction.

---

[13] August 29, 2011 Transcript of Case Review, attached to Defendant's Amended Rule 61 Motion Appendix at A60-A61.
[14] August 29, 2011 Transcript of Case Review, attached to Defendant's Amended Rule 61 Motion Appendix at A60-A61.
[15] December 15, 2011 Sentencing Transcript, at pgs. 4-5.
[16] December 15, 2011 Sentencing Transcript, at pgs. 4-5.
[17] Superior Court Docket No. 26- State's Motion to Declare McDougal a Habitual Offender.

On December 15, 2011, at sentencing, McDougal was declared a habitual offender pursuant to 11 *Del.C.* § 4214(b) on the two drug convictions and was sentenced to two life sentences and was sentenced as a habitual offender pursuant to 11 *Del. C.* § 4214(a) on the weapon conviction to five years at Level V.[18]

McDougal filed a direct appeal to the Delaware Supreme Court. On September 5, 2012, the Delaware Supreme Court affirmed the judgment of the Superior Court.[19]

McDougal filed a timely motion for postconviction relief on July 10, 2013. Rule 61 counsel was appointed and given leave to amend Defendant's *pro se* motion. Rule 61 counsel filed McDougal's amended Rule 61 motion on July 1, 2014. Because McDougal's amended motion raised claims relating to alleged improprieties of the Office of the Chief Medical Examiner ("OCME"), the Rule 61 motion was stayed for some time to allow the handling of those issues to be sorted out by the Superior Court.[20] The stay has since been lifted.[21]

There was further delay while the parties awaited the Affidavit of Conflict Counsel who was no longer practicing law and was not responsive to the Court's follow-up efforts to obtain an Affidavit. Eventually a briefing schedule was entered bypassing the Affidavit of conflict counsel.[22] Mr. Weiler, the Public Defender who represented McDougal at his VOP hearing and at his first case review on this case did provide an Affidavit in this Rule 61 motion.[23]

---

[18] *Andre McDougal v. State,* 2012 WL 3862030 (Del.).
[19] *Id.*
[20] Superior Court Docket Nos. 61, 62, 65,
[21] Superior Court Docket No. 66.
[22] See, Court letter dated July 12, 2016- Superior Court Docket No. 67.
[23] Superior Court Docket No. 85- Affidavit of Timothy J. Weiler in response to McDougal's Rule 61 motion.

6

After briefing was completed, McDougal filed a motion *pro se* to add two new claims.[24] McDougal's counsel also filed a motion to add additional claims.[25] Since McDougal was represented by Rule 61 counsel, the Court denied McDougal's *pro se* motion to raise additional claims and granted McDougal's counsel's motion to raise additional claims.[26] McDougal's Rule 61 counsel was instructed to consider the additional claims that McDougal sought to raise in his *pro se* submission, and to include in a second amended Rule 61 motion *all* the Rule 61 claims that counsel believed were meritorious and wanted the court to consider.[27]

On March 28, 2017, McDougal's counsel filed his Second Amended Motion for Postconviction Relief on McDougal's behalf. On May 25, 2017, the State filed its response to the Second Amended Motion, and on June 29, 2017, McDougal's counsel filed a reply thereto.

In McDougal's reply, filed by Rule 61 counsel on McDougal's behalf, counsel requested that the drugs at issue be retested to confirm authenticity. Counsel noted that subsequent case law on the OCME claims has caused counsel to reassess its position as to these claims. Counsel represented that if the drugs tested positive for heroin on the retest, McDougal's Rule 61 claims related to the improprieties of the OCME would be withdrawn.[28]

Because McDougal had been sentenced as a habitual offender to two life sentences stemming from the drugs at issue, the Court ordered the drugs retested, with the

---

[24] Superior Court Docket No. 73.
[25] Superior Court Docket No. 74.
[26] Court letter dated February 14, 2017- Superior Court Docket No. 75.
[27] *Id.*
[28] Superior Court Docket No. 80- Reply to State's Answer to Second Amended Motion, at pg. 2.

understanding that if the drugs tested positive for heroin, McDougal's claims as to any alleged improprieties of the OCME will be deemed withdrawn in their entirety.[29]

On January 24, 2018, the State advised the court that the retesting was completed. On the retest, the drugs tested positive for heroin.[30]

This Rule 61 motion is now ripe for consideration.

## FACTS

The facts of the incident at issue were set forth by the Delaware Supreme Court in its decision on McDougal's direct appeal.[31]

As stated by the Delaware Supreme Court, on November 18, 2010, at approximately 10:20 a.m., a detective from the City of Wilmington Police Department's Operation Safe Streets was conducting surveillance in the 2300 block of Carter Street in Wilmington, Delaware.[32] The area was known by police to be a high crime area with drug trafficking activity.[33] The detective conducted his surveillance with binoculars from a nearby rooftop. The day was clear and the detective had an unobstructed view of the target area.[34]

At approximately 10:35 a.m., the detective's attention was drawn to an African American man, wearing a black leather jacket, who entered the 2300 block of Carter Street from the north. The man, later identified as McDougal, then entered the alleyway on the east side of Carter Street next to a vacant row house at number 2314. After a few seconds, McDougal walked onto the porch at number 2312. It is undisputed that

---

[29] Superior Court Docket No. 82- letter dated August 18, 2017 ordering the retest of the drugs at issue.
[30] Superior Court Docket No. 86.
[31] *Andre McDougal v. State,* 2012 WL 3862030, at *1 (Del.).
[32] *Id.*
[33] *Id.*
[34] *Id.*

8

McDougal neither owned nor resided at that property. After a few more seconds, McDougal sat down on the front steps. Another man then entered the porch and stayed a couple of minutes.[35]

Thereafter, two other African American men approached Carter Street from the north. The detective observed McDougal walk back to the alleyway and then quickly leave the alleyway. Thereafter, the detective observed McDougal engage in some kind of interchange with one of the men, who later was identified as James Hamilton. The detective testified that it appeared to him that Hamilton and McDougal engaged in what the police term a "hand-to-hand" transaction involving the exchange of drugs and money.[36]

At that point, additional law enforcement officers were called in to assist. A police sergeant stopped Hamilton and patted him down. While the officer was speaking with Hamilton, four baggies of heroin, each containing a blue wax paper baggie stamped "Jaguar," fell from Hamilton's pant leg onto the ground.[37]

The police searched the porch area of 2312 Carter Street.[38] Under a hat that was sitting on a chair they found a handgun and one hundred thirty baggies, each containing a blue wax paper baggie of heroin with the name "Jaguar" stamped on it. The heroin was packaged as ten bundles of thirteen baggies each. The police detective testified that the

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] McDougal's Rule 61 counsel advises that he has obtained an Affidavit from the owner of the house swearing that she did not give permission to anyone to search her porch. McDougal very much wants postconviction review on this issue: the failure of his trial counsel to move to suppress the evidence. However, Rule 61 counsel did not make such a claim because after a careful review of the record and the law, Rule 61 counsel has concluded that McDougal (who did not own or reside at the house) lacked standing to contest the search of the porch. See, McDougal's Second Amended Motion for Postconviction Relief, pg. 5, ftnt. 15.

heroin, which was later determined to weigh 2.71 grams, had a street value of approximately $600.[39]

At the time the handgun was seized, it was inoperable. No fingerprint or DNA testing was conducted on the weapon, although the serial number indicated that it had been stolen outside the State of Delaware.[40]

## MCDOUGAL'S SUBJECT RULE 61 MOTION

McDougal, through Rule 61 counsel, raised five claims for consideration, but has withdrawn two of those claims, those claims pertaining to the alleged improprieties of the OCME, leaving three claims remaining.

As previously stated, McDougal's Rule 61 counsel represented to the court that if the drugs were retested, and came back positive for heroin, McDougal's OCME claims would be deemed withdrawn. The drugs were retested, and they came back positive for heroin. Consequently, McDougal's OCME claims are hereby deemed withdrawn.

Three claims remain pending in the subject Rule 61 motion. The three claims are as follows:

1) trial counsel was ineffective for stipulating that McDougal was a Person Prohibited;

2) counsel was ineffective during plea negotiations; and

3) counsel was ineffective for failing to object to McDougal's sentence to two life sentences for offenses that should have merged at the time of sentencing.

Each of these claims will be addressed in turn.

---

[39] *Andre McDougal v. State*, 2012 WL 3862030, at *1 (Del.).
[40] *Id.*

10

## Claim One: Counsel's Stipulation to McDougal's Person Prohibited Status

At trial, McDougal stipulated, through counsel, that he was not permitted to possess a firearm. The stipulation did not include the reason that McDougal was prohibited.

To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington.*[41] This test requires that defendant prove that trial counsel's performance was objectively unreasonable and that the defendant was prejudiced as a result.[42]

Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[43] The *Strickland* Court explained that a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[44]

Under the second prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.[45] In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[46] Some errors will have a pervasive effort and some will have had an isolated, trivial effect.[47] The movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[41] *Strickland v. Washington,* 466 U.S. 668 (1984).
[42] *Id.* at 694.
[43] *Id.* at 689.
[44] *Id.* at 690.
[45] *Id.* at 693.
[46] *Id.* at 693.
[47] *Id.* at 695-96.

proceeding would have been different.[48]   A reasonable probability is a probability sufficient to undermine confidence in the outcome.[49]   The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[50]   A defendant must make and substantiate concrete allegations of actual prejudice.[51]

McDougal argues that by counsel's stipulating that he was a person prohibited, the jury was permitted to draw the impermissible conclusion that he was a person of bad character with a general criminal disposition.  This same argument was made in *Dale v. State.*[52]  In *Dale,* the Delaware Supreme Court held that although it is true that person prohibited charges are frequently severed, it is also true that they are sometimes tried together with the other charged offenses.[53]  Notwithstanding the frequency with which person prohibited charges are severed, a defendant making an ineffective assistance of counsel claim must show that joinder of the offenses was sufficiently prejudicial that it was objectively unreasonable for defense counsel not to move for severance.[54]

In this case, the issue was whether the heroin and gun belonged to McDougal.  McDougal was also charged with PDWCF and receiving a stolen firearm.  The heroin and the handgun were found under the same hat on a chair on the porch area at 2312 Carter Street. Given the gun's proximity to the heroin, it was logical to assume that whoever possessed the heroin also possessed the handgun.

---

[48] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 694 (1984).
[49] *Id.*
[50] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 695-696 (1984).
[51] *Younger v. State,* 580 A.2d 552, 556 (Del. 1990).
[52] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017).
[53] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017) (citing cases at ftnt.23).
[54] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017).

Although McDougal stipulated that he was a person prohibited from possessing a gun by virtue of a prior conviction, the defense was that neither the heroin or the firearm belonged to McDougal.

During closing argument, the State stated: "You will see a Stipulation that was entered into by the parties that the State read into the record yesterday. And the defendant acknowledges he was a person prohibited at that time because of prior convictions. **Now, he doesn't acknowledge that he possessed it and the State is not relieved of its burden of proving that he possessed the gun."**[55]

McDougal's counsel strenuously argued at closing that McDougal did not know about the drugs or the gun under the hat on the porch, that neither belonged to him, and that he should be found not guilty of the charges.[56]

The jury found that the State met its burden to establish that the gun and the heroin under the hat were McDougal's and convicted him of those charges, but the jury also found that the State failed to meet its burden that McDougal knew the gun was stolen and that McDougal intended to use the gun during the commission of his drug dealing. The jury acquitted McDougal of the charges of receiving a stolen firearm and PDWDCF.

Prior to deliberations, the Court instructed the jury, that: "You must determine whether the defendant is guilty or not guilty solely from the evidence presented during the trial. . . You will be required to reach a separate verdict for each offense. Each verdict must be independent of your decision on any other."[57]

---

[55] September 14, 2011 Closing Statement, at pg. 15.
[56] September 14, 2011 Closing Statement, at pgs. 18-24.
[57] Superior Court Docket No. 58- Appendix filed along with Amended Motion for Postconviction Relief, Appendix A88.

Juries are presumed to follow the court's instructions.[58] It is evident that this jury did. If the jury had imputed a general criminal disposition or propensity for the possession and use of firearms, McDougal would have been convicted of all the charges. The jury's verdict reflects that they did what they were instructed to do. They considered each count separately and reached a verdict, convicting McDougal of some charges and acquitting him of others based solely on the evidence presented at trial.

The evidence at trial established that McDougal had engaged in a hand-to-hand transaction and that the heroin sold had a "Jaguar" stamp. The heroin on the porch under the hat had the identical "Jaguar" stamp. The gun at issue was next to the heroin under the same hat on the porch. It was logical to infer that whoever possessed the heroin also possessed the gun, and vice versa.

The evidence at trial also established that McDougal had not touched the gun during the hand-to-hand transaction, that the gun was inoperable at the time of the drug transaction,[59] and while there was testimony that the gun had been stolen, there was no evidence linking the theft of the firearm to McDougal or that McDougal was aware that the firearm was stolen. If the jury had drawn an impermissible conclusion that McDougal was a person of bad character with a general criminal disposition, then they would have convicted him of all the charges. The jury did not. The record reflects the jury's diligence in fulfilling their responsibility to render a separate verdict as to each charge based only on the evidence presented during the trial.

A defendant alleging an ineffective assistance of counsel claim must show actual prejudice. Under the facts and circumstances of this case, McDougal cannot demonstrate

---

[58] *Hamilton v. State,* 82 A.3d 723, 727 (Del. 2013).
[59] September 13, 2011 Trial Transcript, at pgs. 53-54.

a reasonable probability that there would have been a different result had trial counsel moved to sever the PDWPP charge. Because McDougal cannot satisfy the prejudice prong of *Strickland*, this claim fails and this court need not address trial counsel's performance.

### Claim Two: Claim of Ineffectiveness During Plea Negotiations

McDougal claims that his counsel was ineffective for failing to inform him that he could be facing a life sentence as a habitual offender if convicted at trial, depriving him of effective assistance during plea negotiations. McDougal also claims that his counsel failed to advise him that the VOP sentence would stand regardless of the outcome of the instant case.

In the context of the plea offer process, to establish the prejudice prong of the *Strickland* test for ineffective assistance of counsel, a defendant must show that the outcome of the plea process would have been different with competent advice.[60] If a plea offer has been extended, a defendant has the right to effective assistance of counsel in considering whether to accept it, and if that right is denied, prejudice can be shown if the loss of the plea led to a conviction on more serious charges or the imposition of a more severe sentence.[61]

In the subject case, at the VOP hearing on the manslaughter conviction, held on March 2, 2011, that court noted on the record that McDougal would be eligible to be sentenced as a habitual offender, if convicted of the subject charges.[62]

---

[60] *Lafler v. Cooper*, 132 S.Ct. 1376, 1380-1381 (2012).
[61] *Missouri v Frye*, 132 S.Ct. 1399, 1409-1410 (2012), *Lafler v. Cooper*, 132 S.Ct. 1376, 1384-85, 1387 (2012).
[62] *State v. McDougal*, Criminal Action No. 0607023450, March 2, 2011 Contested Violation of Probation Hearing Transcript, at pg. 32.

At the June 13, 2011 case review held in this case the State offered McDougal a plea deal with a three-year prison sentence recommendation. Although the three-year sentence was only a recommendation, there is no question that the Superior Court gives deference to the State's sentencing recommendations and absent some exceptional circumstance there is no reason to believe that the court would have deviated from that recommendation.[63] McDougal rejected the plea offer.

The next day, June 14, 2011, McDougal's counsel sent McDougal two letters. In the first letter, counsel reiterated that McDougal had been offered a three-year plea deal. Counsel urged McDougal to accept the plea offer advising him that if convicted at trial McDougal would be facing significantly more jail time than that offered in the plea.[64] Counsel discussed the evidence that would be presented at trial and then stated:

> Given the fact that you received a lengthy jail sentence under violation of probation, I was able to get a very lenient plea offer on the new charges. I suspect the State is not so much concerned about obtaining convictions for new charges because of the large sentence you received on the VOP. In other words they already obtained pretty much what they wanted no matter what happens at the trial and it's your case to lose. So it is my advice to you to cut your losses now and don't risk the exposure and getting convictions with more minimum mandatory time.[65]

In the second, follow-up letter, of June 14, 2011, counsel reminded McDougal that he had been convicted of Assault 1st (1998), Manslaughter (2008), Possession of a Firearm by a Person Prohibited (2001, 2000), Possession of a Firearm During Commission of a Felony (1996), and Escape after Conviction (2000).[66]

---

[63] See, *Harden v. State,* -- A.3d --, Del.Supr. No. 290, 2017 (Del. March 1, 2018).
[64] Superior Court Docket No. 85, Affidavit of Timothy J. Weiler in response to Rule 61 motion, at Exhibit A.
[65] *Id.*
[66] Superior Court Docket No. 85, Affidavit of Timothy J. Weiler in response to Rule 61 motion, at Exhibit B.

16

Counsel advised McDougal that his prior criminal record was important because if he was convicted of **"ANY felony in [his] current case, [McDougal was] facing up to life imprisonment."**[67] Counsel advised that if the new conviction was a Title 11 violent felony, then the minimum sentence he was facing would be the statutory maximum for the offense under the habitual offender statute, 11 *Del.C.* § 4214(a).[68]

**Counsel further explained that if McDougal was convicted at trial for either Trafficking or Possession with Intent to Deliver, he was facing a mandatory life sentence as a habitual offender under 4214(b).**[69]

Counsel enclosed a copy of the habitual offender statute, 11 *Del.C.* § 4214, for McDougal.[70]

McDougal claims that counsel did not advise him that he could be subjected to life imprisonment under the habitual offender statute if convicted at trial. Counsel's June 14, 2011 letters establish conclusively to the contrary. McDougal was made fully aware that he could be sentenced to life imprisonment if convicted of any felony, and to a mandatory life sentence if convicted of either trafficking or possession with intent to deliver. Despite knowing that he was facing the potential of life sentences if convicted at trial, McDougal still turned down the plea offer and proceeded to trial.

McDougal also claims in his Rule 61 motion that he was not advised that the VOP sentence would stand regardless of the outcome of the instant case. The record reflects to the contrary. The record shows that both the prosecutor and McDougal's trial counsel

---

[67] Superior Court Docket No. 85, Affidavit of Timothy J. Weiler in response to Rule 61 motion, at Exhibit B (emphasis added).
[68] *Id.*
[69] *Id.*
[70] *Id.*

17

tried to dispel him of his mistaken impression that he needed to prevail on these charges in order to "get out from under" the VOP sentence.[71]

Specifically, at McDougal's sentencing, his trial counsel represented that McDougal was under the mistaken impression that he needed to prevail on the subject charges in order to "get out from under" the VOP sentence. Both counsel and the prosecutor spoke to McDougal to dispel him of his mistaken impression and tried to persuade him to take the plea.[72]

McDougal's contentions that he did not know he could be convicted as a habitual offender and sentenced to life imprisonment, and that he did not know that even if he prevailed on the subject charges his VOP conviction would still stand, are without merit. The record reflects that he was so advised and still chose to reject the plea offer.

McDougal's claim that he was not properly advised during plea negotiations is without merit.

### Claim Three: Ineffectiveness For Not Seeking Merger of the Life Sentences

McDougal claims that counsel was ineffective for failing to request the merger of his Trafficking and Possession with Intent to Deliver ("PWITD") charges for the purpose of sentencing.

The sentencing statute in effect at the time of the offense (November 18, 2010), and indictment (January 18, 2011), controlled this action.[73] The law on the issue of the merger of trafficking and PWITD was well-settled and clear that "since each offense

---

[71] December 15, 2011 Sentencing Transcript, at pgs. 4-5.
[72] December 15, 2011 Sentencing Transcript, at pgs. 4-5.

[73] See, *Ingram v. State,* 2014 WL 7010667 (Del.).

contained an element of proof not required by the other, a defendant could be simultaneously convicted and sentenced for trafficking and PWITD."[74]

The Delaware Supreme Court recognized that it was "well-established Delaware law" that convictions and sentences for trafficking and PWITD do not violate double jeopardy provisions.[75] The Delaware Supreme Court held that when a defendant was convicted under both code provisions, he must be sentenced for both convictions.[76]

The Delaware Supreme Court explained that trafficking requires proof of *possession* and *quantity* regardless of any intent to deliver, while PWITD requires proof of *possession* and *intent to deliver* regardless of the quantity. Since both of these charges require proof of different facts, neither offense is included in the other and a defendant may be sentenced separately for each of the offenses even though, as a practical matter, they often arise out of the same incident. [77]

In fact, in *Skyers,* the Delaware Supreme Court reversed the Superior Court's decision to merge the two convictions into one sentence, holding that since the defendant was convicted for both trafficking and PWITD, he must be sentenced for both convictions even though the offenses may arise out of the same incident.[78]

At the time of McDougal's arrest and indictment, the law on this issue was well-settled and clear "since each offense contained an element of proof not required for the

---

[74] *State v. Skyers,* 560 A.2d 1052, 1054-55 (Del.1989); *Carter v. State,* 1991 WL 316955, *1 (Del. 1991).
[75] *McNair v. State,* 2003 WL 21241355, *1 (Del. 2003); *State v. Skyers,* 560 A.2d 1052, 1054-55 (Del.1989); *Melton v. State,* 2013 WL 4538071, *1 (Del. 2013).
[76] *State v. Skyers,* 560 A.2d 1052, 1054-55 (Del.1989); *Melton v. State,* 2013 WL 4538071, *1 (Del. 2013); *Carter v. State,* 1991 WL 316955, *1 (Del. 1991).
[77] *State v. Skyers,* 560 A.2d 1052, 1054-55) (Del. 1989); *McNair v. State,* 2003 WL 21241355, *1 (Del. 2003); *State v. Dollard,* 2008 WL 4137985, at *2 (Del. 2008) (Delaware courts have consistently held that trafficking and possession with intent to deliver are not barred by double jeopardy and that defendant can be sentenced for both.)
[78] *State v. Skyers,* 560 A.2d 1052, 1054-55 (Del.1989)

19

other, a defendant could be simultaneously convicted and sentenced for trafficking and PWITD."[79]

In determining prejudice, it is necessary to focus on the existing law at the time of the convictions and sentences.[80] McDougal's trial counsel was not deficient for failing to raise an issue that was "well-settled" by the Delaware Supreme Court and against the controlling law.

In 2011, the drug laws were altered by House Bill 19. House Bill 19 repealed a significant portion of the existing criminal drug laws and created new and/or revised offenses.[81] House Bill 19 removed Trafficking as a criminal offense and created aggravated possession as a new offense. [82] House Bill 19 included possession with the intent to deliver within the new offense of drug dealing.[83] The Legislative History of the new drug laws (which was not in effect at the time of McDougal's arrest and indictment) revealed an intent to charge a defendant with the highest grade of the offense applicable and not to multiple charges arising out of the same incident.

The Legislative History of H.B. 19 at § 48-49 provided:

> Sections 48 and 49 allow, for most drug crimes, a single defendant to be charged with the highest grade of offense applicable to the defendant's crime. No other drug dealing, aggravated possession, or simple possession crimes would be charged.

In *Ayers v. State*,[84] decided in July 2014, after the new drug law went into effect and controlled that proceeding, the Delaware Supreme Court held that there was no

---

[79]*State v. Skyers*, 560 A.2d 1052, 1054-55 (Del.1989); *Carter v. State*, 1991 WL 316955, *1 (Del. 1991).

[80] *Flamer v. State*, 585 A.2d 736, 748 (Del. 1990).

[81] See, H.B. 19, 146th Gen.Ass. (2011-2012).

[82] H.B. 19 at § 39, 146th Gen. Ass. (2011-2012).

[83] H.B. 19 at H.B. 19 at § 39, §48-49, 146th Gen. Ass. (2011-2012).

[84] *Ayers v. State*, 97 A.3d 1037, 1041 (Del. 2014).

double jeopardy violation to charge a defendant with aggravated possession and also drug dealing since the two offenses do not include all the same elements. Drug dealing requires an intent to deliver a smaller quantity of drugs whereas aggravated possession requires only possession, but of a larger quantity of drugs. However, the State acknowledged and the Delaware Supreme Court agreed, that these two crimes were to merge for the purpose of sentencing."[85]

Following the practice established in 2014 by *Ayers*, the Delaware Supreme Court in *Landry v. State*,[86] reiterated that the convictions for aggravated possession and drug dealing do not violate the principles of double jeopardy, however, the convictions should merge for the purpose of sentencing.[87]

McDougal in his Rule 61 motion contends that "it is the longstanding practice of the Court" to merge Trafficking and PWITD at sentencing. However, it has never been the practice of the court to merge "trafficking" and PWITD at sentencing. It does not appear that *trafficking* has ever been merged with PWITD. In fact, the law was well-settled to the contrary that convictions for trafficking and PWITD did not violate double jeopardy provisions and that a defendant convicted under both must be sentenced for both convictions.

After the new drug laws were enacted, *trafficking* was removed as a criminal offense, and new and/or revised drug offenses were created such as aggravated possession. Following the enactment of the new drug laws, it became the practice to

---

[85] *Id.*

[86] *Landry v. State*, 2015 WL 7168512, *1 (Del.).

[87] *Landry v. State*, 2015 WL 7168512, *1 (Del.); See also, *Ellerbe v. State*, 2017 WL 462144, *1 (Del. 2017) (in this case, as in *Ayers*, drug dealing and aggravated possession were charged as alternative theories of criminal liability. As we held in *Ayers* the prosecution and conviction for both drug dealing and aggravated possession did not offend principles of double jeopardy. The two convictions were properly merged for sentencing and a statutorily authorized sentence was imposed for one.)

21

merge drug convictions for "aggravated possession" and "drug dealing" at sentencing. That was not the practice at the time of McDougal's sentencing for his convictions of *trafficking* and PWITD. In fact, at the time of McDougal's sentencing for his convictions of trafficking and PWITD the law was clear and well-settled, a defendant convicted of both those charges were to be sentenced for both.[88] Trial counsel was not deficient for failing to seek a merger of these two sentences, when the law was clear and well-settled and to the contrary. This claim is without merit.

## Evidentiary Hearing is Denied

McDougal's request for an evidentiary hearing is denied. Following a full, comprehensive and thorough review of the evidentiary record, McDougal's allegations were either reasonably discounted as not supported by the record or not material to a determination of McDougal's claim. It does not appear that an evidentiary hearing will aid in the resolution of this motion and is denied.

---

[88] *State v. Skyers,* 560 A.2d 1052, 1054-55 (Del. 1989) (Superior Court's decision to merge the convictions of trafficking and PWITD is reversed. Defendant must be sentenced for both trafficking and PWITD, even though those convictions arose out of the same incident.); *State v. Dollard,* 2008 WL 4137985, at *2 (Del. 2008) (Delaware courts have consistently held that trafficking and possession with intent to deliver are not barred by double jeopardy and that a defendant convicted of both can be sentenced for both.)

22

## <u>CONCLUSION</u>

The three claims that McDougal raises in his Rule 61 motion are without merit for the reasons discussed above. For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied.

**IT IS SO RECOMMENDED.**

_____
Commissioner Lynne M. Parker

oc: Prothonotary
cc: Timothy J. Weiler, Esquire
    Christopher D. Tease, Esquire