**Kevin J. HOWARD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 346, 1996.**

Supreme Court of Delaware.

Submitted: Dec. 16, 1997.
Decided: Jan. 6, 1998.

---

Brian J. Bartley, Kathryn B. Lunger (argued), and Bernard J. O'Donnell, Assistant Public Defenders, Office of the Public Defender, Wilmington, for Appellant.

Timothy J. Donovan, Jr., Deputy Attorney General, Department of Justice, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court en Banc.

WALSH, Justice:

In this appeal from the Superior Court, the appellant, Kevin J. Howard ("Howard"), seeks to overturn convictions for Unlawful Sexual Intercourse First Degree and various related offenses involving seven separate incidents and six separate victims. The charges against Howard were severed and resulted in two jury trials. Howard raises two issues on appeal: (i) the limited extent of the severance deprived him of a fair trial;

and (ii) his Fifth Amendment right not to testify and his Sixth Amendment right to assistance of counsel were abridged when the State elicited, and commented upon, the fact that a defense fingerprint expert, who did not testify, reviewed the State's fingerprint evidence. We conclude that the Superior Court did not abuse its discretion by ordering limited severance and that admission of the evidence concerning the defense expert was harmless error. Accordingly, we affirm the convictions.

## I.

Between February 1991 and April 1994, six women were raped in New Castle County in seven separate incidents. None of the victims could identify her assailant, but, at each crime scene, police were able to collect semen samples. These samples were sent to the Federal Bureau of Investigation for DNA analysis, and the results confirmed that one individual perpetrated all seven rapes. At three crime scenes, police also collected fingerprints left by the perpetrator.

In April 1994, Howard was indicted on 21 charges, including nine counts of Unlawful Sexual Intercourse First Degree. Prior to trial, Howard moved to sever the offenses and be tried separately on each of the seven incidents. The Superior Court granted a partial severance, ordering two trials, each encompassing three victims. The primary issue at each trial was the identity of the perpetrator. Each trial included counts that were supported by both DNA evidence and fingerprint evidence, as well as counts that were supported by DNA evidence alone.

In the first trial, the State elicited testimony from its fingerprint expert to the effect that a fingerprint expert hired by the defense, but who did not testify at trial, had also examined the fingerprint evidence. The prosecutor subsequently commented on the missing defense expert in his rebuttal summation. Howard's objections to the introduction of the testimony and to the prosecutor's comment were overruled.[1] Both juries con-

victed Howard on all counts, and he was sentenced to lengthy consecutive terms of imprisonment. In this appeal, Howard challenges both the Superior Court's limited grant of severance and the allowance of testimony concerning, and comment on, the absent defense witness.

## II.

Turning to Howard's first assigned error, this Court reviews a trial court's decision to grant or deny severance for abuse of discretion. *Weddington v. State*, Del.Supr., 545 A.2d 607, 616 (1988). While abuse of discretion usually depends on the facts and circumstances of each case, as a general rule, a trial court may not refuse severance where there is a reasonable probability that "substantial injustice" would result from a joint trial. *Bates v. State*, Del.Supr., 386 A.2d 1139, 1141 (1978).

Howard claims that the Superior Court abused its discretion by failing to grant a more extensive severance. He contends that the State's evidence varied across the six[2] incidents, in both strength and type. In three incidents, the State had fingerprint evidence to bolster its DNA evidence, while in the other three the State had only DNA evidence. The statistical probability, based on DNA evidence, that Howard was not the perpetrator ranged from 1 in 30 million to 1 in 500 million. Howard argues that the Superior Court, at a minimum, should have severed the charges on the basis of a DNA-fingerprint versus DNA-only distinction, with a further severance based on the range of statistical probability of the DNA evidence. Howard asserts that the failure to grant broader severance prejudiced him because the cumulative effect of combining DNA-fingerprint incidents with DNA-only incidents and the lower statistical probability incidents with the higher ones made the State's case against him stronger than it otherwise would have been.

---

1. Interestingly, Howard's objection to the introduction of the same testimony in the second trial was sustained by the Superior Court.

2. Prior to the second trial, the State elected not to pursue charges arising out of one of the original seven incidents.

Superior Court Criminal Rule 8(a) gives the Superior Court authority to join two or more offenses in the same indictment "if the offenses charged are of the same or similar character or are based on the same act ... or on 2 or more acts ... connected together or constituting parts of a common scheme or plan." This authority is limited, however, by Superior Court Criminal Rule 14, which provides that "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses ..., the court may order separate trials of counts...." The trial court found that, if all seven incidents were tried together, Howard would be prejudiced due to the cumulative nature of the evidence. *Wiest v. State*, Del. Supr., 542 A.2d 1193, 1195 (1988). The trial court was also of the view, however, that it would be a waste of judicial resources to order a separate trial for each incident because the specific fingerprint evidence would also be admissible in the DNA cases. Ultimately, the Superior Court ordered severance of the counts into two trials, each of which encompassed incidents relating to three victims. We find no abuse of discretion in the Superior Court's decision to order such severance and affirm its ruling.

Unlike the Superior Court, we do not rest an affirmance on a bad acts analysis under D.R.E. Rule 404(b). There is nothing in the record to indicate that the seven rapes were carried out with a distinctive *modus operandi*. There was, thus, no need for the Superior Court to employ a *Getz* analysis.[3] The fingerprint matches are not, in our view, evidence of prior bad acts on the part of the defendant but are simply further circumstantial evidence of the perpetrator's identity. The fingerprints collected at crime scenes are obviously relevant to bolster other evidence of identification, whether or not a particular "bad act" had occurred. Further, in the DNA-only cases, the fingerprint matches would be admissible provided the State could establish a link between the fingerprints and a DNA sample that is shown to match that of the defendant. In sum, because the fingerprints were properly admissible in the DNA-only cases, the Superior Court acted within its discretion in not severing the charges

along those lines. The ultimate conclusion of severance into two trials was correct, given the levels of match probability which flowed from the DNA evidence in all cases.

Before the Superior Court, and on appeal, Howard relies heavily on *State v. McKay*, Del.Super., 382 A.2d 260 (1978), in which the Superior Court granted severance in a 35-count indictment arising out of a series of highly publicized rapes. In the case *sub judice*, the Superior Court distinguished *McKay*, correctly, as a pre-DNA case involving a diversity of evidence. Each severance application tends to be fact-intensive. Where, as here, the evidence is of the same type and impact, there is not the same risk as in *McKay*, that the jury will be influenced by the cumulative effect of differing types of circumstantial and direct evidence linking the defendant to the offenses.

### III.

■ With respect to the constitutional issues raised by Howard, our review is *de novo* to determine if the Superior Court erred in formulating or applying legal precepts. *See Benson v. State*, Del.Supr., 636 A.2d 907, 910 (1994).

■ Howard claims that the Superior Court's admission of testimony elicited by the State concerning the defense expert and the State's comment on the expert's absence in its rebuttal summation violated his Fifth Amendment right not to testify and his Sixth Amendment right to assistance of counsel. *U.S. Const.* amend. V: *U.S. Const.* amend VI. He argues that the State invited the jury to infer guilt from the absence of testimony by the expert witness who had been hired by the defense and who had examined the State's fingerprint evidence. Howard further argues that, while it may be permissible for the State to comment on a witness's absence, it is impermissible for the State to comment on the absence of an expert witness actually hired by the defense. *See Benson*, 636 A.2d at 910; *Bradley v. State*, Del.Supr., 559 A.2d 1234, 1239 (1989).

In response, the State argues that this is a classic "missing witness" case. It asserts

---

3. *Getz v. State*, Del.Supr., 538 A.2d 726 (1988).

that, in such cases, it is permitted to comment on the absence of a defense witness and that the status of the witness, as expert or lay, is irrelevant. *See Benson*, 636 A.2d at 910. Moreover, the State contends the defense "opened the door" on the question of whether the State's fingerprint evidence was verifiable by cross-examination on quality control by others.

While we do not condone the actions of the State in this case and remain skeptical that the question of verification was subject to exploitation in the manner pursued by the State, we find that any error resulting from such actions to be harmless beyond a reasonable doubt. An error in admitting evidence is harmless where the properly admitted evidence, taken alone, is sufficient to support a conviction. *Nelson v. State*, Del.Supr., 628 A.2d 69, 77 (1993); *Johnson v. State*, Del. Supr., 587 A.2d 444, 451 (1991). The overwhelming amount and reliability of the DNA evidence against Howard made harmless any error arising from the admission of the testimony and the subsequent comment. The sole issue at trial was identification of the common perpetrator. The defense offered no evidence on this point, and the DNA evidence with its probability margins establishes Howard's guilt beyond question.

Accordingly, we AFFIRM the decisions of the Superior Court.