**Willie L. McNAIR, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 387, 2009.

Supreme Court of Delaware.

Submitted: Jan. 20, 2010.
Decided: March 8, 2010.

Ferris W. Wharton, Office of the Public Defender, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

STEELE, Chief Justice:

Willie L. McNair appeals his convictions in Superior Court for Third Degree Burglary, Theft, Offensive Touching, and Criminal Mischief. McNair claims that the trial judge erred by (1) admitting evidence of McNair's similar bad acts, (2) denying McNair's motion for mistrial, and (3) failing to give the jury a missing evidence instruction. Because the trial judge committed no error, we **AFFIRM**.

## FACTS AND PROCEDURAL HISTORY

### A. McNair breaks into a parked car.

On January 17, 2008, Joseph Silva, a security guard at a multi-story parking garage in Wilmington, Delaware, encountered an individual rummaging through the passenger side of a car's interior. Silva saw that person's face, while he moved

from the front to the back of the car, and recognized him as McNair, whose photograph was posted in the garage office.

As Silva approached the car, he noticed items and broken glass scattered about the inside of the car and on the parking garage floor. When Silva asked McNair about these observed facts, McNair answered that someone had broken into his car, but he refused to file a report. When Silva attempted to call for additional security, McNair threatened him and then fled the garage.

Officer Stuart Walker of the Wilmington Police Department responded to Silva's call. Walker and Silva viewed a surveillance videotape showing an individual fleeing the garage, but the trial judge did not accept that videotape into evidence, because of its poor quality and positioning.

### B. The State charges McNair; and the trial judge declares a mistrial.

On March 30, 2008, police arrested McNair and charged him with Third Degree Burglary, Theft, Offensive Touching, and Criminal Mischief. A jury failed to reach a verdict after trial, and the trial judge declared a mistrial. The trial judge scheduled a new trial, and the second jury found McNair guilty on all four counts. Before and during McNair's second trial, McNair raised several issues with the trial judge.

### 1. McNair objects to Silva's testimony about the photograph that suggests his earlier committed crimes.

McNair objected to both the admission of the photograph he expected had served as a basis for Silva recognizing him, as

well as to Silva's testimony concerning the location of and the frequency that Silva viewed the photograph. McNair argued that D.R.E. 404(b) prohibited Silva's testimony, because it would indicate to the jury that McNair had previously committed crimes in the garage.

The trial judge noted that the photograph could potentially prejudice McNair, but ruled that its probative value far outweighed the potential for prejudice. The trial judge accordingly admitted a cropped version of the photograph that contained no writing that suggested McNair's earlier criminal acts. The trial judge also attempted to sanitize the accompanying testimony by instructing the State that Silva could testify that he had seen the photograph several times, but that he could not testify to where he had seen it.

### 2. McNair requests a missing evidence instruction for the garage videotape.

Before the second trial, McNair requested a missing evidence instruction[1] regarding the State's failure to collect and preserve the surveillance videotape. At a hearing on the issue, Walker testified on *voir dire* that he could not recall viewing the videotape. But Walker did recall being told that there was nothing useful, because the footage showed people running in the garage stairwell and was blurry. Silva, who remembered watching the videotape with Walker, testified that the footage was not very good and that neither he, nor Walker, could identify the perpetrator from the video. Based on these testimonies, the trial judge held that the videotape had no evidentiary value, and

---

**1.** A missing evidence instruction, or *"Lolly"* instruction, tells the jury, in a case where the State has failed to collect or preserve evidence which is material to the defense, to assume that the missing evidence would have tended to prove the defendant not guilty. *Lolly v. State*, 611 A.2d 956, 962 n. 6 (Del.1992).

declined to instruct the jury to assume that the missing videotape would have tended to prove that McNair was not guilty.

### 3. McNair moves for mistrial.

At trial, after being prompted by Silva's response to a question on direct examination, McNair moved for a mistrial. During Silva's direct-examination, the following exchange occurred:

Q. And how do you know [McNair]?

A. Um—

Q. Have you ever seen a photograph of him before?

A. Yes, I have.

Q. How many times have you seen a photograph?

A. Daily, when I was at work.

McNair moved for a mistrial based on Silva having testified to the exact circumstance the trial judge had precluded. The trial judge denied McNair's motion for a mistrial, reasoning that she ruled out of an "abundance of caution" and Silva's statement did not rise to the level of prejudice requiring a mistrial. In any event, the trial judge gave a curative instruction to the jury to disregard the "last statement that the witness made as to where and in what manner the saw the photograph."

2. *Baumann v. State*, 891 A.2d 146, 148 (Del. 2005).

3. *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994).

4. D.R.E. 404(b)

5. *Getz v. State*, 538 A.2d 726, 730 (Del.1988).

6. *Id.* (internal quotations omitted).

## DISCUSSION

### A. The photograph and Silva's testimony do not evince "prior bad acts."

McNair argues that the trial judge erred by permitting the admission of unfairly prejudicial "prior bad acts" evidence. McNair asserts that the photograph and Silva's testimony about how Silva knew McNair, suggested to the jury that he had previously committed crimes. McNair alleges that only his criminally suggestive photograph explains the connection between him and Silva. Therefore, McNair asserts that the trial judge should have conducted a full *Getz* analysis, which would have rendered Silva's entire sanitized testimony inadmissible.

We review a Superior Court judge's rulings on the admission of evidence for abuse of discretion.[2] An abuse of discretion occurs when a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice.[3]

D.R.E. 404(b) forbids the introduction of evidence of "other crimes, wrongs, or acts"[4] solely to prove that the defendant acted in conformity therewith.[5] A trial judge may admit evidence of prior misconduct, however, "when it has independent logical relevance and when its probative value is not substantially outweighed by the danger of unfair prejudice,"[6] subject to the five prong test of *Getz v. State*.[7]

7. In *Getz*, we set forth the following guidelines governing the admissibility of prior bad acts evidence:

(1) The evidence must be material to an issue or ultimate fact in dispute.
(2) The evidence must be introduced for a purpose sanctioned by D.R.E. 404(b).
(3) The other crimes must be proved by evidence which is plain, clear, and conclusive.
(4) The other crimes must not be too remote in time from the charged offense.

To implicate D.R.E 404(b) and *Getz*, the evidence which a party seeks to admit must involve prior bad acts. Here, the contested evidence did not constitute prior bad acts evidence. The State never told the jury the reasons for posting McNair's photograph in the garage office, nor did the State identify any earlier misconduct. Rather, the State offered and used the evidence solely to bolster Silva's identification of McNair.[8] Indeed, the trial judge, out of an abundance of caution, took several steps to prevent the jury from inferring from Silva's testimony that McNair had committed earlier bad acts. Therefore, the trial judge's decision to admit that evidence did not implicate D.R.E 404(b) and *Getz*.

The trial judge admitted McNair's photograph by analogy to the use of police photographs or mug shots, at trial. Although the use of police photographs at trial "risks suggesting to the jury that [the] defendant has a prior criminal record,"[9] the State may show a mug shot or similar photograph to the jury, subject to three prerequisites:

> (1) the prosecution must show a demonstrable need to introduce the photographs; and (2) the photographs, if shown to the jury, must not imply that the defendant has a prior criminal record; and (3) the introduction at trial does not draw particular attention to the

source or implications of the photographs.[10]

Here, the State met all three of the prerequisites announced in *Brookins*. First, there can be no doubt that the photograph touched on the central issue in this case—the accuracy of Silva's identification of McNair and Silva's credibility. Second, the trial judge cleansed the photograph of any writing that might suggest earlier criminal activity. Third, the limitations the trial judge placed on Silva's testimony prevented unduly emphasizing on the source of the photograph or any inferences that might be drawn from that source.

Thus, the trial judge did not abuse her discretion by not conducting a full *Getz* analysis of the contested evidence. Rather, the trial judge properly applied the balancing test required by D.R.E 403,[11] concluding that the contested evidence "far outweigh[ed] the potential for prejudice" to McNair. Further, the trial judge properly attempted to minimize any chance of prejudice to McNair by limiting Silva's testimony about the photograph.

### B. The trial judge's instruction cured Silva's arguably prejudicial testimony.

McNair next asserts that the trial judge erred by denying McNair's motion for a mistrial after Silva testified where he had seen the photograph. McNair argues that

---

(5) The court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. If the evidence is admitted, the jury should be instructed concerning the purpose for the admission. *Getz*, 538 A.2d at 734.

8. *See Howard v. State,* 704 A.2d 278, 281 (Del.1998) ("The fingerprint matches are not, in our view, evidence of prior bad acts on the part of the defendant but are simply further circumstantial evidence of the perpetrator's identity.").

9. *Brookins v. State,* 354 A.2d 422, 422–23 (Del.1976).

10. *Id.* at 423 (citing *United States v. Harrington,* 490 F.2d 487 (2d Cir.1973)).

11. D.R.E. allows the exclusion of relevant evidence "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." The balancing test is also a significant prong of the *Getz* analysis.

Silva's testimony directly contravened the trial judge's instruction, and, thus, warranted a mistrial. McNair argues that the trial judge's curative instruction to the jury insufficiently mitigated the harm from Silva's blundered testimony.

■ We review a trial judge's denial of a motion for a mistrial for abuse of discretion.[12] We stated recently in *Banther v. State* that:

> When a trial judge denies a mistrial application, that decision will be reversed on appeal only if it is based upon unreasonable or capricious grounds. A trial judge should grant a mistrial only where there is a manifest necessity or the ends of public justice would be otherwise defeated. The remedy of a mistrial is mandated only when there are no meaningful and practical alternative to that remedy.[13]

■ "A trial judge's prompt curative instructions are presumed to cure error and adequately direct the jury to disregard improper matters for consideration. Juries are presumed to follow the trial judge's instructions."[14] Here, the trial

judge instructed the jury to "disregard the last statement that [Silva] made as to where and in what manner the saw the photograph." The trial judge gave the curative instruction immediately after the parties discussed the issue. Because the trial judge's curative instruction presumptively remedied any prejudice caused by Silva's statement, the trial judge did not abuse her discretion by denying a mistrial.

## C. Failure to admit the blurry videotape did not require a Lolly Instruction.

■ Finally, McNair asserts that the trial judge should have instructed the jury to assume that the surveillance videotape from the garage would have tended to disprove McNair's guilt. We review the denial of a requested *Lolly* instruction *de novo*.[15]

■ A trial judge must give a missing evidence instruction when the State fails to gather or preserve *material* evidence.[16] But, the trial judge exercises "plenary power over the admissibility of evidence which is relevant, *i.e.*, of consequence."[17] Here, the trial judge properly

---

**12.** *Purnell v. State*, 979 A.2d 1102, 1108 (Del. 2009).

**13.** 977 A.2d 870, 890 (Del.2009) (citations and internal quotations omitted).

**14.** *Purnell,* 979 A.2d at 1109.

**15.** *Hendricks v. State*, 871 A.2d 1118, 1123 (Del.2005).

**16.** *Lolly,* 611 A.2d at 961. In reviewing a claim that the State failed to preserve potentially exculpatory evidence we must consider: (1) whether the requested material, if in the possession of the State at the time of the defense request, would have been subject to disclosure under Superior Court Criminal Rule 16 or under *Brady v. Maryland;* (2) if so, whether the State had a duty to preserve the material; and (3) if the State has a duty to preserve the material, was the duty breached, and what consequences should flow from a

breach. *Hammond v. State*, 569 A.2d 81, 86 (Del.1989). The consequences which should flow from a breach of the duty to preserve evidence are determined in accordance with a separate three-part analysis which considers: (1) the degree of the State's negligence or bad faith; (2) the importance of the missing evidence considering both the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of other evidence produced at trial to sustain a conviction. *Id.* This analysis, of course, assumes that the missing evidence might be *exculpatory, i.e.,* that is it relevant to a disputed issue. Relevancy "consists of both materiality and probative value." *Getz,* 538 A.2d at 731.

**17.** *Lolly,* 611 A.2d at 961 n. 5 (citing D.R.E. 401; *Getz,* 538 A.2d at 731).

concluded that the tape had no evidentiary value, and therefore, was not material. The trial judge based her conclusion on Walker's and Silva's testimony. Walker and Silva testified that the poor quality and poorly positioned videotape footage failed to capture the perpetrator's face. The transcript of the hearing supports the trial judge's conclusion, and we find no error. Further, we agree with the trial judge's conclusion that the mere suggestion that video enhancement techniques were available, without more, is too speculative to warrant a finding that the video could have been given evidentiary value.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the Superior Court.