IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL JACKSON, | § | |
| | § | No. 395, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court of the |
| | § | State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1608013519 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: December 13, 2018
Decided: February 28, 2019

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

### O R D E R

This 28th day of February 2019, upon consideration of the no-merit brief under Supreme Court Rule 26(c), appellate counsel's motion to withdraw, and the State's response, it appears to the Court that:

(1)    In June 2017, the appellant was convicted of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Possession of a Firearm during the Commission of a Felony, Disregarding a Police Officer's Signal, and Disregarding a Red Light.  At sentencing, Jackson was declared a habitual offender and was sentenced to a total of forty-three years of Level V incarceration suspended after forty years for probation.  This is Jackson's direct appeal.

(2) On appeal, Jackson's appellate counsel has filed a no-merit brief and motion to withdraw under Rule 26(c). Appellate counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Jackson has supplemented the Rule 26(c) brief with claims for our consideration. The State has responded to the position taken by Jackson's appellate counsel and the claims raised by Jackson and has moved to affirm the Superior Court's judgment.

(3) When considering a Rule 26(c) brief and motion to withdraw, our standard and scope of review is twofold.[1] First, we must be satisfied that the appellant's counsel made a conscientious examination of the record and the law for claims that could arguably support the appeal.[2] Second, we must conduct our own review of the record to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[3]

(4) The evidence at trial fairly established that, on August 17, 2016, between 6:00 and 7:00 p.m., Wilmington Police Detective Matthew Rosaio and his partner, Probation Officer Joseph Scioli, were driving west on East 26th Street through the intersection at Northeast Boulevard when a green Mercury Marquis traveling south

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[2] *Penson v. Ohio*, 488 U.S. at 83.
[3] *Id.*

entered the same intersection against the red light. Midway through the intersection the driver of the Mercury Marquis slammed on his brakes, which forced the other drivers proceeding through the intersection on the green light—including Detective Rosaio—to slam on their brakes. After about ten seconds, the driver of the Mercury Marquis put his car in reverse and returned to where he should have stopped to properly await a green light.

(5)     Detective Rosaio activated the emergency equipment on his patrol vehicle to stop the Mercury Marquis for the red light violation. The Mercury slowed down and pulled over to the curb as if to stop but then sped off when Detective Rosaio exited the patrol car. Due to the vehicle and pedestrian traffic in the area, Detective Rosaio did not attempt to pursue the fleeing Mercury and instead relayed information about the Mercury and its direction of travel to other officers in the immediate area.

(6)     Detective Rosaio and Officer Scioli lost sight of the Mercury for about fifteen seconds. When they saw it again, it was stopped at the intersection of West 26th Street and North Washington Street. The front passenger door of the Mercury was open, the front passenger seat was unoccupied, the keys were in the ignition, and the car was running. When Detective Rosaio approached the driver side of the Mercury, he saw that the driver's seat was unoccupied. Detective Rosaio also saw a black semiautomatic firearm with an extended magazine on the front driver side floorboard. Wearing latex gloves, Detective Rosaio removed the magazine and one live round of

3

ammunition from the firearm and placed it on the passenger seat of the Mercury. When moving the firearm, Detective Rosaio also found a black cell phone.

(7) Rather than take photographs of the Mercury Marquis and its contents at the intersection of 26th Street and North Washington Street, Officer Scioli drove the vehicle back to the station where he and Detective Rosaio took photographs of the vehicle and collected the evidence. Eventually, the firearm and cell phone were swabbed for DNA. Those swabs, and a buccal swab from Jackson, were sent to BODE Laboratory ("BODE") for DNA comparison. When filling out the laboratory transmittal form, Detective Rosaio checked a box on the form giving BODE permission to consume the entire DNA sample, if necessary.

(8) The entire DNA sample was consumed during the testing. The analyst's test results revealed that Jackson's DNA was on the firearm and the magazine.

(9) At Jackson's preliminary hearing, Detective Rosaio testified in error that he photographed the Mercury Marquis at "the scene, [at] 26th and Washington."[4] Detective Rosaio corrected his misstatement later when he testified at a suppression hearing that the photos "were actually taken at the police station."[5] At trial, Detective Rosaio testified again that he photographed the Mercury Marquis and its contents at

---

[4] Hr'g Tr. at 19 (Sept. 21, 2016).
[5] Hr'g Tr. at 37 (Mar. 24, 2017).

4

the police station.[6]  The photographs were admitted into evidence at trial without objection.[7]

(10)  A month before trial, Jackson's trial counsel filed a motion seeking a *Lolly* instruction because of the State's failure to preserve part of the DNA sample for use by the defense or to notify the defense that the State had directed BODE to fully consume the sample.[8]  On June 19, 2017, the Superior Court issued a preliminary decision finding that the State had a duty to preserve the DNA sample.[9]  The court reserved its decision on the request for the *Lolly* instruction, however, until after the close of evidence at trial.[10]

(11)  On the first day of trial, Jackson's trial counsel asked the Superior Court to convert the motion seeking a *Lolly* instruction to a motion to suppress the DNA evidence.  Trial counsel argued that the evidence should be excluded because the jury would be confused by an instruction telling them to give a favorable inference to the defense when considering the evidence, when the jury had also heard that the same evidence revealed a DNA match unfavorable to the defense.  Trial counsel also informed the court that Jackson wanted a bench trial rather than a jury trial.  After

---

[6] Trial Tr. at 152–53 (June 20, 2017).
[7] Trial Tr. at 7 (June 21, 2017).
[8] *Lolly v. State*, 611 A.2d 956 (Del. 1992).  In a case where the State has failed to collect or preserve evidence that is material to the defense, a *Lolly* instruction tells the jury to assume that the missing evidence is favorable to the defense. *McNair v. State*, 990 A.2d 398, 400 n.1 (Del. 2010).
[9] 2017 WL 2651711 (Del. Super. June 19, 2017).
[10] *Id.*

conducting the required colloquy with Jackson, the Superior Court accepted Jackson's jury trial waiver as knowing and voluntary. After that, the Superior Court ruled that it would exclude the DNA evidence. At the conclusion of the bench trial, the Superior Court found Jackson guilty of the charged offenses based on the trial testimony of Detective Rosaio and Officer Scioli—who observed the driver of the Mercury Marquis—and evidence establishing that the cell phone in the Mercury belonged to Jackson and that the loaded firearm was at the driver's feet.

(12) In his first claim on appeal, Jackson claims that Detective Rosaio committed perjury at the preliminary hearing when testifying that he took photographs of the Mercury Marquis at the scene. Jackson also claims that the prosecutor knowingly used the perjured testimony at trial. Because the claims were not raised at trial, we have reviewed them for plain error.[11]

(13) Under the Delaware Code, a person is guilty of perjury when the person "swears falsely."[12] "A person 'swears falsely' when the person intentionally makes a false statement or affirms the truth of a false statement previously made, knowing it to be false or not believing it to be true, while giving testimony."[13]

(14) Jackson has not demonstrated, and the record does not reflect, that Detective Rosaio intentionally made a false statement at the preliminary hearing when

[11] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[12] 11 *Del. C.* §§ 1221–1223.
[13] *Id.* § 1224 (Supp. 2019).

he testified about where the photographs were taken. Jackson also has not demonstrated how he was prejudiced by the misstatement. There is no indication in the record that the prosecutor argued that the photographs were taken at the scene. On plain error review, Jackson's claims are without merit.

(15) In his second claim on appeal, Jackson claims that the trial judge's decision to exclude the DNA evidence rather than to make an inference that the evidence was exculpatory was an abuse of discretion. Jackson's assertion disregards his trial counsel's tactical decision to seek exclusion of the evidence rather than the *Lolly* inference. Jackson's disagreement with his trial counsel's strategy is in the nature of an ineffective assistance of counsel claim. Because we do not consider an ineffective assistance of counsel claim on direct appeal, we decline to consider the claim as part of this appeal.[14]

(16) Having carefully reviewed the record, we conclude that Jackson's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Jackson's appellate counsel made a conscientious effort to examine the record and the law and properly determined that Jackson could not raise a meritorious claim on appeal.

---

[14] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

7

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED.

The judgment of convictions is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

8