IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DARYL BALDWIN, | § | |
| | § | No. 431, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No.  2306010642A(K) |
| STATE OF DELAWARE, | § | 2306010642B(K) |
| | § | |
| Appellee. | § | |

Submitted: January 21, 2026
Decided: April 16, 2026

Before **TRAYNOR**, **LEGROW** and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED.**

Robert M. Goff, Esquire, Office of the Public Defender, Wilmington, Delaware, *for Appellant Daryl Baldwin*.

John Williams, Esquire, Delaware Department of Justice, Wilmington, Delaware, *for Appellee State of Delaware*.

**LEGROW**, Justice:

This is a difficult case. The defendant was convicted of numerous felony offenses involving the sexual assault of a 13-year-old girl. Physical evidence, including DNA, supported the indicted charges, and the complaining witness was below the age at which she could consent to sexual contact with the defendant. The State's case was a strong one.

But one of the key issues at trial was whether the defendant engaged in sexual intercourse with the victim. The resolution of that issue affected the lead charges in the case, which carried substantial mandatory prison terms. Male DNA was found in the complaining witness's vaginal vestibule, but there was insufficient DNA material to either include or exclude the defendant as the source of that DNA. Nevertheless, over the defendant's objection, the court excluded as unfairly prejudicial evidence that spermatozoa found on the complaining witness's underwear was attributable to an unidentified male who was conclusively *not* the defendant. Because the exclusion of that evidence deprived the defendant of the opportunity to argue to the jury that another individual was the source of the male DNA found in the complaining witness's vaginal vestibule, we reverse the defendant's convictions on the charges involving the sexual-intercourse finding and remand for a new trial as to those charges.

1

## I.

On June 17, 2023, Daryl Baldwin visited H.A.'s home to smoke crack with H.A.'s mother and stepfather. Later that night or early the following morning, thirteen-year-old H.A. left the home with Baldwin. Baldwin drove his black 2002 Chevrolet Monte Carlo to two local motels. Surveillance video from those two locations showed Baldwin engaging in what appeared to be drug transactions.

H.A. fell asleep in the car. When she woke up, it was approximately 5:30 a.m. on June 18, 2023, and Baldwin was parked in a secluded, wooded area near Bowers Beach. Baldwin, who was naked when H.A. woke up, then sexually assaulted H.A. H.A. testified that Baldwin kissed her; removed her clothing; choked her; touched her breasts, vagina, buttocks, and legs; forced her to perform oral sex on him; and put both his finger and his penis in her vagina. After Baldwin fell asleep in the backseat, H.A. quietly gathered her belongings, left the car, and ran down the street to call 911.

Trooper Emmanuel Velez responded to the 911 call and found H.A. on Whitwells Delight Road in Bowers Beach. H.A. directed Trooper Velez to the tree line, where Baldwin's car was still parked. Trooper Velez found Baldwin naked and asleep in the backseat of the car and arrested him.

Law enforcement transported H.A. to the hospital, where a forensic nurse performed a sexual assault examination. H.A.'s urine screen tested positive for

2

fentanyl and cocaine. Law enforcement also collected evidence from Baldwin's Monte Carlo, including a footprint on the front windshield that was a match for H.A.'s right foot. Data extracted from H.A.'s and Baldwin's phones revealed messages that the two exchanged in the hours leading up to the assault in which they planned a sexual interaction. Baldwin was thirty-seven; H.A., at thirteen, was below the legal age to consent to any such interaction.[1]

The DNA evidence collected during H.A.'s examination and from her clothing revealed the following:

- Male DNA was found in H.A.'s vaginal vestibule, left and right medial thighs, buttocks, face, left and right breasts, abdomen, and back.[2]

- DNA samples from H.A.'s left medial thigh, face, neck, both breasts and back matched Baldwin's known DNA profile.[3]

- DNA samples from H.A.'s right medial thigh, buttock, vaginal vestibule, and abdomen did not contain a sufficient amount of amplified DNA to draw a conclusion regarding whether Baldwin

---

[1] *See* 11 *Del. C.* § 761(l) ("A child who has not yet reached that child's sixteenth birthday is deemed unable to consent to a sexual act with a person more than 4 years older than said child.").

[2] App. to Opening Br. at A926 (DNA Report).

[3] *Id.* at A927 (DNA Report).

was a match.[4]  In other words, those samples did not contain sufficient DNA material to either include or exclude Baldwin as the source.

- Sperm cells were found on swabs taken from H.A.'s buttocks, but no conclusions could be drawn regarding the source of the sperm because there was an insufficient amount of amplified DNA in the sample.[5]

- Male DNA identified as spermatozoa was found on a stain in H.A.'s underwear, and testing showed that the DNA was *not* a match for Baldwin.[6]

Baldwin was charged with Sex Offender Unlawful Sexual Conduct Against a Child, Sexual Abuse of a Child by a Person in a Position of Trust First Degree, Rape Second Degree, Rape Fourth Degree, three counts of Unlawful Sexual Contact Second Degree, Endangering the Welfare of a Child, Possession of Controlled or Counterfeit Controlled Substance, and Possession of Drug Paraphernalia.  The court severed the first count—Sex Offender Unlawful Sexual Conduct—and the remaining nine counts proceeded to a six-day jury trial.

---

[4] *Id.* at A928 (DNA Report).

[5] *Id.* at A925, A928 (DNA Report).

[6] *Id.* at A927 (DNA Report).

The lead charges presented to the jury—Sexual Abuse of a Child by a Person in a Position of Trust and Rape Second Degree—required the State to prove that Baldwin engaged in sexual intercourse with H.A. The State alleged and sought to prove at trial two different forms of sexual intercourse: vaginal intercourse or fellatio. The Male DNA found in H.A.'s vaginal vestibule was important physical evidence to support the State's theory that Baldwin engaged in vaginal intercourse or fellatio with H.A.[7]

On the third morning of trial, the defense objected to the State's proposed redactions to the report authored by the State's senior forensic DNA analyst, Paul Gilbert (the "DNA Report"). That report memorialized the DNA testing results from the swabs obtained from S.A.'s body after the assault. The State proposed to redact from the DNA Report any reference to the spermatozoa found in H.A.'s underwear and the DNA results from that spermatozoa.[8] The State explained to the Court that the spermatozoa was not a match to Baldwin, and the State took the position that the presence of the spermatozoa, which was attributable to another male, reflected a specific instance of sexual conduct by H.A. that was inadmissible under Delaware's Rape Shield Statute, 11 *Del. C.* § 3509.[9]

---

[7] *Id*. at A735, A745, A747 (State's Closing Argument).

[8] App. to Opening Br. at A363 (May 13, 2024 a.m. Trial Tr.).

[9] *Id*. (May 13, 2024 a.m. Trial Tr.).

5

Baldwin's counsel argued that the entire, unredacted DNA Report should be provided to the jury under Delaware Rule of Evidence ("D.R.E.") 106, the "rule of completeness."[10] The defense asserted that the Rape Shield Statute did not apply because the presence of spermatozoa in H.A.'s underwear was not an instance of sexual conduct, since there could be non-sexual explanations for its presence.[11] Specifically, Baldwin's counsel argued, "[t]his is a DNA result. This is not trying to elicit testimony from [H.A.] of any specific sexual conduct. It is circumstantial evidence that was found in the DNA that was tested. I think it is relevant in the case[] that there was other DNA that was not my client's. And, again, I think the whole picture needs to come in."[12]

After additional argument from the parties, the court overruled Baldwin's objection and allowed the State to admit the DNA Report in redacted form. The court first held that the Rape Shield Statute did not apply because Baldwin was not seeking to admit the challenged information to attack H.A.'s credibility under 11 *Del. C.* § 3508 or to prove consent under 11 *Del. C.* § 3509.[13] Accordingly, the court

---

[10] *Id*. at A364, A492 (May 13, 2024 a.m. Trial Tr.). D.R.E. 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time."

[11] The defense argued that H.A. lived with several males and the spermatozoa could have transferred to her clothing in the wash. App. to Opening Br. at A496 (May 13, 2024 a.m. Trial Tr.).

[12] *Id*. at A365 (May 13, 2024 a.m. Trial Tr.).

[13] *Id*. at A504–05 (May 13, 2024 p.m. Trial Tr.).

held, the evidence's admissibility turned on the balancing test required under D.R.E. 403. Under that rule, a court may exclude otherwise relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasted time, or the needless presentation of cumulative evidence.[14] The court reasoned that the DNA of another male on H.A.'s underwear had "minimal" probative value and there was a substantial risk to admitting the evidence. The court explained:

> Now the defense is requesting that the unredacted version of the State's DNA report be offered, not to show prior sexual conduct of the complaining witness at all, but only under the rule of completeness. So that, generally, is a jury is to see an entire document, if that is possible.
>
> Now, according to the [d]efendant, the presence of another male's sperm on the complaining witness's underwear does not show prior sexual conduct or prior sexual acts by the complaining witness as there could be a host of other reasons why another male's DNA would be on her underwear, such as nonsexual transfer occurring in a home where she resided with other adult males other than the [d]efendant.
>
> Now, accepting that argument of the [d]efendant, the probative value of this evidence is then reduced, and maybe even becomes minimal.
>
> And, in addition, the [c]ourt finds that there is a very real danger that, should the [j]ury be presented with this information, they could conclude that this is evidence of the complaining witness's engaging in prior sexual conduct; and, therefore, there is a significant danger of unfair prejudice to the State, and a significant danger of confusing the issues, and a significant danger of misleading the jury.

---

[14] D.R.E. 403.

7

The [c]ourt, therefore, finds that the danger of all of these substantially outweighs any probative value of this evidence and, therefore, the information will remain redacted.[15]

The State admitted the redacted DNA Report through its expert, Paul Gilbert.[16] Gilbert explained to the jury that the DNA found on H.A.'s medial left thigh, face, neck, left and right breasts, and back matched Baldwin's known DNA profile.[17] Gilbert further testified, consistent with his report, that male DNA was present on H.A's medial right thigh, buttock, vaginal vestibule, and abdomen, but there were insufficient amounts of DNA in those samples to rule Baldwin in or out as the source.[18] Because of the trial court's evidentiary ruling, the jury never learned that another male's DNA, not Baldwin's, was found on the underwear that H.A. was wearing on the night of the attack. In its closing argument, the State told the jury that "the defendant's DNA is all over [H.A.]"[19] and that Baldwin's drug use and H.A.'s post-assault activities—including urinating at least once—could explain why there was insufficient DNA in her vaginal vestibule to compare to Baldwin's known

---

[15] App. to Opening Br. at A505–07 (May 13, 2024 p.m. Trial Tr.).

[16] *Id.* at A535 (May 13, 2024 p.m. Trial Tr.). The DNA Report was marked as State Exhibit 35 and provided to the jury during its deliberations. *Id.* at A933–37 (DNA Report). The unredacted DNA Report was marked as Court Exhibit 2 to preserve the record and was not provided to the jury at any point. *Id.* at A659 (May 14, 2024 Trial Tr.); *id.* at A925–32 (Unredacted DNA Report).

[17] *Id.* at A543–46 (May 13, 2024 p.m. Trial Tr.); *id.* at A934–36 (DNA Report).

[18] *Id.* at A547–49 (May 13, 2024 p.m. Trial Tr.); *id.* at A934–36 (DNA Report).

[19] *Id.* at A735 (State's Closing Argument).

8

DNA profile.[20] Without the evidence that another male's DNA was found on H.A.'s underwear, the defense was limited in its ability to persuasively argue that another individual could be the source of the male DNA in H.A.'s vaginal vestibule.

At the conclusion of trial, the court instructed the jury regarding the elements for each charge. Two charges presented to the jury—Rape Second Degree and Sexual Abuse of a Child by a Person in a Position of Trust First Degree—required the State to prove that Baldwin engaged in sexual intercourse with H.A. With respect to the sexual intercourse charges, the court advised the jury that it was required to unanimously determine whether the State proved beyond a reasonable doubt that Baldwin engaged in either or both of the charged forms of sexual intercourse with H.A.: vaginal intercourse or fellatio.[21] The State also was required to prove sexual penetration to establish Rape Fourth Degree.[22] Additionally, one of the three charges of Unlawful Sexual Contact related to the State's allegation that Baldwin touched H.A.'s vagina.[23]

---

[20] *Id*. at A733–38 (State's Closing Argument).

[21] App. to Opening Br. at A805–06 (Jury Instructions) ("In this case, two different forms of sexual intercourse have been alleged. One allegation involves vaginal course. Other allegation involves fellatio. The jury will be required to reach a unanimous verdict as to whether the State has proven beyond a reasonable doubt that either of these allegations or both of these allegations occurred to satisfy the first element listed above.").

[22] *Id*. (Jury Instructions) (stating that the first element for Rape in the Fourth Degree is sexual penetration); *id*. at A746 (State's Closing Argument).

[23] *Id*. at A747 (State's Closing Argument). The other two charges of Unlawful Sexual Contact related to the State's allegations that Baldwin touched H.A.'s breasts and buttocks. *Id*. (State's Closing Argument).

The jury ultimately convicted Baldwin of all charges. The verdict form reflected the jury's specific factual findings on the sexual-intercourse element. According to the verdict form, the jury unanimously agreed that Baldwin engaged in vaginal intercourse with H.A.[24] Baldwin waived his right to a jury trial on the Sex Offender Unlawful Sexual Conduct charge and proceeded to a bench trial the day after the jury's verdict. The Sex Offender Unlawful Sexual Conduct charge required the State to prove that Baldwin committed a sexual offense against H.A. and that he was a convicted sex offender at the time.[25] The trial judge convicted Baldwin of Sex Offender Unlawful Sexual Conduct, expressly finding that "the State proved beyond a reasonable doubt that there is vaginal intercourse in this case, and that Baldwin acted intentionally with respect to that vaginal intercourse."[26]

The court sentenced Baldwin to a total of 64 years and 9 months of unsuspended Level V time, followed by probation. Baldwin filed this timely appeal.

---

[24] *Id*. at A847–48 (Jury Form) (finding Baldwin guilty of Sexual Abuse of a Child by a Person of Trust in the First Degree (Sexual Intercourse) and Rape in the Second Degree, and indicating that "all 12 jurors unanimously agreed that the defendant engaged in sexual intercourse in the form of vaginal sexual intercourse"). The jury did not unanimously agree that Baldwin engaged in sexual intercourse in the form of fellatio.

[25] 11 *Del. C.* § 777A. The parties stipulated that Baldwin was a convicted sex offender at the time of the alleged offense. App. to Opening Br. at A866–69 (May 16, 2024 Trial Tr.).

[26] App. to Opening Br. at A875–76 (May 16, 2024 Trial Tr.). Although the court explained that "there are a number of charges against the defendant," including some charges that did not require proof of sexual intercourse, Baldwin's counsel asked the court to clarify which charge the court found to establish that Baldwin committed a sexual offense against H.A and was therefore guilty of Sex Offender Unlawful Sexual Conduct. The judge then clarified that it found there was proof of sexual intercourse beyond a reasonable doubt. *Id*. at A874–76 (May 16, 2024 Trial Tr.).

10

## II.

Baldwin raises one argument on appeal. He contends that the Court abused its discretion in weighing the probative value and prejudicial effect of the evidence of another male's DNA found on H.A.'s underwear. Baldwin maintains, as he argued in the trial court, that the "rule of completeness" embodied in D.R.E. 106 required the evidence's admission. Although Baldwin acknowledges that otherwise relevant evidence may be excluded under D.R.E. 403, he contends that the trial court did not appreciate the highly relevant nature of this evidence and therefore gave it insufficient weight in the D.R.E. 403 balancing. That ruling, Baldwin maintains, distorted the meaning of the other DNA evidence admitted at trial because it allowed the State to argue and the jury to infer that the inconclusive DNA evidence found on H.A.'s body, particularly in her vaginal vestibule, would have been a match for Baldwin if there had been enough DNA material to test. The State responds that Baldwin's convictions should be affirmed because D.R.E. 106 does not override the protections of Delaware's Rape Shield Statute. The State maintains that the trial court properly applied D.R.E. 403 and correctly weighed and excluded the DNA found on H.A.'s underwear.

This Court "review[s] a trial court's ruling admitting or excluding evidence for an abuse of discretion."[27] "An abuse of discretion occurs when a court has

---

[27] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015).

exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice [] as to produce [an] injustice."[28]

We agree with Baldwin that the trial court's evidentiary ruling placed insufficient weight on the probative value of the spermatozoa found on H.A.'s underwear. That misstep, we believe, was the result of the convoluted way that the parties presented their arguments to the trial court. First, the State did not make clear to defense counsel until shortly before trial that the State sought to exclude the male DNA evidence found on H.A.'s underwear.[29] Accordingly, the trial court had to resolve the parties' evidentiary dispute during trial and without the benefit of briefing. Then, rather than explaining that the evidence at issue was directly relevant to proving that someone other than Baldwin was the source of the male DNA in H.A.'s vaginal vestibule, Baldwin framed the issue as being governed by the "rule of completeness," which prevented the trial court from appreciating the evidence's direct relevance to Baldwin's defense.

Although defense counsel argued to the court that it was "relevant in the case[] that there was other DNA that was not [Baldwin's]," counsel did not articulate the connection between the disputed evidence, the unidentified male DNA in H.A.'s vaginal vestibule, and the critical issue of whether Baldwin engaged in sexual

---

[28] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010).

[29] App. to Opening Br. at A504–05 (May 13, 2024 p.m. Trial Tr.).

intercourse with H.A.[30] Instead, counsel repeatedly framed the argument obliquely—the evidence should be admissible under D.R.E. 106 because "the entire [DNA Report] needs to come in; the Jury needs to see the whole picture. That includes the entire report."[31] When asked by the trial court whether defense counsel had anything else to offer regarding the purpose of the disputed evidence, Baldwin's counsel did not articulate any further justification for admitting the evidence.

The State, in contrast, relied almost exclusively on the Rape Shield Statute, insisting to the trial court that the evidence was not admissible under that law.[32] Even when Baldwin's counsel explained that the defense was not relying on the evidence to challenge H.A.'s credibility or establish consent, the State remained resolute that the Rape Shield Statute operated as a complete bar to the evidence. The State maintained that position on appeal.[33]

---

[30] *Id*. at A365 (May 13, 2024 a.m. Trial Tr.).

[31] *Id*. at A492 (May 13, 2024 a.m. Trial Tr.).

[32] 11 *Del. C.* § 3508 limits the circumstances under which a defendant may offer evidence of a complaining witness's sexual conduct "to attack the credibility of the complaining witness." The statute requires a defendant to first file a written motion regarding the relevancy of the evidence and establishes a procedure for the parties and the court to follow to resolve such a motion. Baldwin did not file any such motion, and his counsel repeatedly disclaimed any intent to rely on the evidence to attack H.A.'s credibility. 11 *Del. C.* § 3509 generally provides that evidence of the complaining witness's sexual conduct with anyone other than the defendant is generally not admissible to prove consent. Again, Baldwin did not seek to introduce the challenged evidence to establish consent; H.A. was below the legal age at which she could consent to sexual conduct with Baldwin. *See* 11 *Del. C.* § 761(l).

[33] In the Superior Court, the State only relied on 11 *Del. C.* § 3509. The trial court addressed both statutes in its ruling and the State relied on both on appeal.

The trial court held that the evidence was not barred under the Rape Shield Statute because Baldwin did not seek to admit the evidence to attack H.A.'s credibility or to prove consent.[34] Instead of adopting either side's incomplete framing of the issue, the trial court correctly analyzed the question under D.R.E. 403, which permits a court to exclude otherwise relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[35] The trial court's reliance on D.R.E. 403 was consistent with established law; we have held that, even when the Rape Shield Statute does not apply, a trial judge may exclude evidence of sexual conduct under D.R.E. 403.[36]

The balancing required by D.R.E. 403 falls within a trial judge's sound discretion.[37] But without a clear explanation of the evidence's importance to the

---

[34] App. to Opening Br. at A504–05 (May 13, 2024 p.m. Trial Tr.).

[35] D.R.E. 403.

[36] *Johnson v. State*, 550 A.2d 903, 905–07 (Del. 1988).

[37] *Reisch v. State*, 628 A.2d 84, 1993 WL 227264, at *1 (Del. June 4, 1993) (TABLE) ("The balancing required by Rule 403 is a determination that falls particularly within the trial court's discretion."); *Myers v. State*, 707 A.2d 766, 1998 WL 138685, at *1 (Del. Feb. 12, 1998) (TABLE) ("The trial court properly performed the balancing required by D.R.E. 403, and, under an abuse of discretion standard, the ruling will not be disturbed."). *See also Green v. St. Francis Hosp., Inc.*, 791 A.2d 731, 738 (Del. 2002) ("The determination of unfair prejudice under D.R.E. 403 is 'within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion.'") (quoting *Mercedes–Benz of North America, Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1366 (Del. 1991)).

14

issues in the case, the court could not reliably perform that balancing.[38]  Properly understood, the challenged evidence was highly probative of the critical question in the case: whether Baldwin engaged in sexual intercourse with H.A.  Simply put, the presence of another male's DNA in H.A.'s underwear—however the DNA got there—created a possibility that the male DNA in H.A.'s vaginal vestibule was not attributable to Baldwin.[39]  Since there was insufficient amplified DNA from the vaginal sample to either include or exclude Baldwin, the jury was left to weigh the likelihood that Baldwin was the source of that DNA.  The jury was aware that Baldwin's DNA was found on other parts of H.A.'s body, and the State fairly drew the inference for the jury that Baldwin also was the source of the male DNA in H.A.'s vaginal vestibule.[40]  That inference may have seemed the only plausible one, since the jury did not hear that another male's DNA was found in H.A.'s underwear.[41]  Certainly, without that evidence, the defense was limited in its ability

---

[38] Baldwin's counsel conceded during oral argument in this court that trial counsel did not explain the evidence's relevance in a detailed manner.  Oral Argument, at 11:08–11:51, *Baldwin v. State*, No. 431, 2024 (Del. Jan. 21, 2026).

[39] Evidence is relevant if it has any tendency to make a fact of consequence to the action more probable or less probable than it would be without the evidence.  D.R.E. 401.

[40] *See* App. to Opening Br. at A734–37 (State's Closing Argument).

[41] During oral argument on appeal, the State seemed to believe that there was other evidence in the record that another male's DNA, conclusively not Baldwin's, was found elsewhere on H.A.'s body.  That was incorrect.  *See* Oral Argument, at 29:37–32:40, *Baldwin v. State*, No. 431, 2024 (Del. Jan. 21, 2026); App. to Opening Br. at A933–36 (DNA Report).

15

to argue that the jury could infer that another male was the source of DNA found in a minor child's vaginal vestibule.

Believing that there was minimal probative value to the evidence, the trial court focused on what it viewed as a "very real danger" that admitting the evidence would unfairly prejudice the State or mislead the jury by creating the impression that the spermatozoa in H.A.'s underwear was evidence that she had engaged in prior sexual conduct.[42] Although there were non-sexual explanations for how spermatozoa could be present on H.A.'s underwear, we acknowledge the possibility that the jury could conclude that the evidence was the result of a sexual encounter. But that possibility did not substantially outweigh the probative force of the evidence, which had exculpatory value as an alternative source for the male DNA found in H.A.'s vaginal vestibule.[43]

Finally, notwithstanding the State's argument to the trial court and on appeal, the trial court correctly concluded that the Rape Shield Statute did not apply to this evidence. Baldwin did not seek to admit the evidence to attack H.A.'s credibility or to prove consent. The State seems to contend that any evidence that could be construed as suggesting that a complaining witness engaged in sexual conduct is

---

[42] App. to Opening Br. at A506 (May 13, 2024 p.m. Trial Tr.).

[43] To the extent the State was concerned about the jury drawing conclusions of that nature, a limiting instruction could have addressed the issue.

16

completely barred by the Rape Shield Statute.[44] That argument misunderstands the statute, which applies to evidence admitted for the purpose of addressing credibility or consent. The statute does not bar the admission of evidence that another individual could be the source of physical evidence.[45] Although the trial court was correct in ruling that the Rape Shield Statute did not bar the evidence, it erred in its D.R.E. 403 analysis.

To summarize: having reviewed the record, we believe that the trial court misunderstood the significance of the challenged DNA evidence and therefore did not properly weigh the evidence's probative value under D.R.E. 403. That ruling—excluding the potentially exculpatory portion of the DNA Report—left Baldwin without physical evidence from which he could argue that another male was the source of the unidentified DNA found in H.A's vaginal vestibule; instead, the State was able to rely upon that same report to prove Baldwin's guilt. The State did not

---

[44] *See* State's Answering Br. at 19 ("Under [the Rape Shield Statute], 'evidence of the prior sexual conduct of an alleged sexual assault victim is admissible only when the statutory procedure is followed and the court determines that the evidence proposed to be offered by the defendant regarding the sexual conduct of the alleged victim is relevant' in attacking the credibility of the complaining witness."). *Cf.* Oral Argument, at 28:07–40, *Baldwin v. State*, No. 431, 2024 (Del. Jan. 21, 2026) (The Court: "Is it [the State's] argument that relevant physical evidence . . . that the defendant seeks to admit for reasons other than the complaining witness's credibility is somehow barred by the Rape Shield Statute?" The State: "Well, I am not sure I would go that far. I think you have to look at the specific circumstances in the case.").

[45] *See People v. Hood*, 550 P.3d 723, 726–28 (Colo. App. Mar. 14, 2024), *reh'g denied* (Apr. 25, 2024) (reversing defendant's convictions and holding that evidence that another individual's DNA was present on a swab of the child victim's external vagina did not fall under the Colorado rape shield statute, was relevant, and the probative value was not substantially outweighed by the danger of unfair prejudice or misleading the jury).

argue that any error was harmless, and we cannot independently conclude that the exclusion of this evidence was harmless given the centrality of the sexual-intercourse question to the lead charges in the case. Accordingly, we reverse Baldwin's conviction for the charges that depended on the jury drawing conclusions about the source of the DNA in H.A.'s vaginal vestibule: Rape Second Degree, Sexual Abuse by a Person in a Position of Trust, Rape Fourth Degree, and one count of Unlawful Sexual Contact. Because the judge's conviction of Baldwin for Sex Offender Unlawful Sexual Conduct likewise depended on the court's conclusion that the State proved vaginal intercourse, we also reverse that conviction. Baldwin conceded at oral argument that his appeal did not apply to his convictions for the remaining charges.[46]

### III.

For the foregoing reasons, we **REVERSE** Baldwin's convictions for Sex Offender Unlawful Sexual Conduct, Rape Second Degree, Sexual Abuse by a Person in a Position of Trust, Rape Fourth Degree, and one count of Unlawful Sexual Contact, and **REMAND** this case for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

[46] Oral Argument, at 16:20–17:30, *Baldwin v. State*, No. 431, 2024 (Del. Jan. 21, 2026).